**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| The Door, *et al.*,<br><br>*Plaintiffs,*<br>vs.<br><br>Joseph B. Edlow, *et al.*,<br><br>*Defendants.* | Case No. 8:26-cv-04326-BAH |

**PLAINTIFFS' REPLY IN SUPPORT OF EX PARTE MOTION FOR A STAY UNDER THE ADMINISTRATIVE PROCEDURE ACT AND TEMPORARY RESTRAINING ORDER**

## TABLE OF CONTENTS

**I. INTRODUCTION** ........ **1**

**II. ARGUMENT** ........ **1**

**A. Plaintiffs Have Organizational Standing and Third-Party Standing.** ........ **1**

**B. Plaintiffs Are Suffering Irreparable Injury.** ........ **3**

**C. Plaintiffs Are Likely to Succeed on the Merits.** ........ **4**

1. Plaintiffs' APA Claims Are Reviewable ........ 4
2. USCIS's Challenged Policies Are Final Agency Actions ........ 4
3. USCIS's Challenged Policies Are Arbitrary and Capricious. ........ 7
4. USCIS's Challenged Policies Are Not In Accordance With Law ........ 9

**D. The Balance of Equities and the Public Interest Strongly Favor Plaintiffs.** ........ **12**

**E. Plaintiffs Are Entitled to a Universal Stay.** ........ **12**

**III. CONCLUSION** ........ **12**

## I. INTRODUCTION

U.S. Citizenship and Immigration Services ("USCIS") has drastically altered its processing of asylum applications for unaccompanied children across the country, disregarding its own procedures requiring that asylum interview notices be generated at least 21 days in advance, providing such short notice that it is impossible for child applicants to meet USCIS's own evidence submission deadlines, and refusing to reschedule interviews to permit a child's counsel to attend. These policies are causing immediate and irreparable harm to Plaintiffs and their child clients.

When an agency makes such consequential policy changes affecting individual rights, the Administrative Procedure Act ("APA") requires that the agency provide a reasoned justification and act in accordance with applicable statutes and regulations. Defendants' Opposition ("Opp.") to Plaintiffs' Motion for a Stay and Temporary Restraining Order ("TRO") confirms that USCIS failed to do so here. Defendants do not contest the facts presented in Plaintiffs' TRO and do not deny that USCIS has in fact begun singling out unaccompanied child applicants for abbreviated notice. Defendants fail to provide *any* justification for USCIS's Inadequate Notice Policy and the sole reason provided for the Exceptional Circumstances Policy misreads relevant law.[1]

Under these circumstances, a stay under 5 U.S.C. § 705 is amply justified to preserve the status quo prior to USCIS's abrupt and unreasoned policy changes.

## II. ARGUMENT

### A. Plaintiffs Have Organizational Standing and Third-Party Standing.

Plaintiffs have both organizational standing and third-party standing on behalf of their child clients. Plaintiffs established that they satisfy the legal test for third-party standing. TRO at 17, ECF 23-1 (citing *Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 214-15 (4th Cir. 2020). In addressing what they refer to as "representational standing," Defendants engage with an incorrect

[1] This reply does not address Defendants' arguments regarding Plaintiffs' Procedural Due Process claim because Plaintiffs' TRO does not rely on this claim.

legal standard.[2] To the extent their arguments can be construed as pertinent to third-party standing, Defendants incorrectly assert that harms to Plaintiffs' clients are "theoretical and speculative" and that "Plaintiffs have not offered any evidence by way of declaration" to show these injuries occurred. Opp. at 8. This ignores Plaintiffs' numerous declarations describing harm to their child clients, including an inability to provide supplemental evidence to support their applications and traumatized children being forced to sit for interviews under conditions of extreme stress without trusted counsel. *See* TRO at 12-14, 18-19. Defendants therefore fail to meaningfully contest Plaintiffs' third-party standing, which is independently sufficient to support a stay and TRO.

Plaintiffs have also demonstrated organizational standing because USCIS's policies impede their core mission of providing effective representation to unaccompanied children. *See* TRO at 3, 16; *see also*, *e.g.*, *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024) (organizations show an injury in fact where a defendant's actions "directly affected and interfered with [their] core business activities."). Defendants misconstrue the record to argue that "Plaintiffs' underlying complaint is about a lack of funding" or a need to make "difficult operational choices." Opp. at 8-9.[3] But Plaintiffs do not complain that they "need to devote more time to . . . tasks [they already perform]," *cf.* Opp. at 8, and nowhere do they suggest that increased funding would resolve the impacts on their core missions or restore the status quo. USCIS's actions restrict Plaintiffs' ability to represent children in their asylum cases, and no amount of money could remedy the harm when a double-booked attorney must send their client to an interview with a stranger, TRO at 26, or when counsel cannot prepare a child to testify. TRO at 12-13. Those harms directly interfere with Plaintiffs' ability to provide effective representation.

---

[2] Defendants cite the test for associational standing, Opp. at 7-8, but Plaintiffs' TRO relies on third-party standing. *See* TRO at 17.

[3] Defendants' citation to *Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012), is unavailing. *Cf.* Opp. at 7. Plaintiffs do not seek to "bootstrap standing by expending . . . resources" on new activities. *Cf. Lane*, 703 F.3d at 675 (quotation marks and citation omitted). Rather, they argue that, regardless of the resources they expend, Defendants' policies make it impossible for them to accomplish their core missions and activities in which they are already engaged.

Again, while acknowledging that Plaintiffs have alleged serious organizational harms, Defendants assert that these harms are "theoretical and speculative" and unsupported by evidence. Opp. at 8. To the contrary, Plaintiffs' sworn declarations describe specific incidents in which a lack of notice or an inability to submit supplemental evidence has interfered with their ability to "meaningfully prepare their child clients for their asylum interviews." *See* TRO at 12-14 (citing Avila-Cimpeanu Decl. ¶¶ 24, 26; Donovan-Kaloust Decl. ¶¶ 36, 38-39; Nally Decl. ¶ 20; Richardson Decl. ¶¶ 43-44, 48-49; Sanchez-Kennedy Decl. ¶¶ 39, 42-44).

Plaintiffs' decisions to turn away new clients, to dedicate resources to recruiting outside attorneys, and to limit other core work because of USCIS's changed policies—which Defendants trivialize—are neither voluntary nor responses to "perceived risks or isolated events." *Cf.* Opp at 9. Plaintiffs have duties to their existing clients and cannot simply choose to stop representing them because their practices are overwhelmed. These are direct effects of USCIS's obstruction of Plaintiffs' core activities. *See, e.g.*, *Republican Nat'l Comm. v. N. Carolina State Bd. Of Elections*, 120 F.4th 390, 397 (4th Cir. 2024) (finding organizational standing where North Carolina's alleged conduct caused plaintiffs to expend disproportionate resources in one state at the expense of their nationwide core activities). Under both Supreme Court and Fourth Circuit precedent, Plaintiffs have established organizational injury for standing purposes. *Id.*

**B. Plaintiffs Are Suffering Irreparable Injury.**

Defendants do not disturb Plaintiffs' showing that USCIS's policies are subjecting them and their clients to irreparable harm. Defendants seem to acknowledge that "[Plaintiffs'] allegations establish" cognizable harms have occurred, Opp. at 15-16, but argue that they are not sufficiently severe or imminent. As the TRO explains, Plaintiffs are experiencing irreparable harm because USCIS is actively causing them to "forgo numerous fundamental components of their representation of unaccompanied children seeking asylum," TRO at 18, and it is actively causing children to proceed at interviews without adequate preparation, without their trusted representative and without the opportunity to provide a full evidentiary submission. TRO at 11-15, 18-19.

That harm is "actual and imminent," and it "cannot be fully rectified by the final judgment

after trial." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 (4th Cir. 2019). *See, e.g.*, Richardson Decl. ¶ 65, ECF No. 23-6; Avila-Cimpeanu Decl. ¶ 59, ECF No. 23-8; Donovan-Kaloust Decl. ¶ 52, ECF No. 23-11. The obstacles erected by Defendants are already obstructing Plaintiffs' core missions, and a final judgment cannot go back in time and enable Plaintiffs to provide effective representation to unaccompanied children at interviews that have already occurred under the intolerable—often inhumane—conditions created by USCIS's unlawful policies.

**C. Plaintiffs Are Likely to Succeed on the Merits.**

1. <u>Plaintiffs' APA Claims Are Reviewable</u>

The Court has federal question jurisdiction over this matter. 28 U.S.C. § 1331. Defendants' citation to *Califano v. Sanders*, 430 U.S. 99 (1977), is misplaced because Plaintiffs do not rely on the APA for subject matter jurisdiction. *See id.* at 106 ("In amending § 1331, Congress obviously has expressly acted to fill the jurisdictional void created by the pre-existing amount-in-controversy requirement"); *see also* Complaint ¶ 1, ECF No. 1.

Further, Defendants cite and rely on the incorrect legal standard for Plaintiffs' APA claims. Opp. at 9. In *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004), the Supreme Court stated that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* at 64. Claims under 5 U.S.C. § 706(1) seek to "compel agency action *unlawfully* withheld" and are subject to a heightened standard because they resemble a mandamus remedy. *Id.* at 63. But Plaintiffs have not brought a claim under § 706(1) and instead assert that USCIS's actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under 5 U.S.C. § 706(2)(A). *See* Complaint.

2. <u>USCIS's Challenged Policies Are Final Agency Actions</u>

The Inadequate Notice and Exceptional Circumstances policies are final agency actions because they mark the consummation of USCIS's decision-making process as to the critical issues of interview notice and rescheduling and have concrete legal consequences for Plaintiffs and their clients. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Defendants offer no support for their

conclusory assertion that "the policies alleged by Plaintiff do not exist." Opp. at 10.

The Exceptional Circumstances Policy is published on the USCIS website and discussed in Defendants' opposition, so it is unclear how Defendants can credibly assert it does not exist. *Compare* Opp. at 4, *with* Opp. at 10. The policy cannot be characterized as non-binding policy guidance because it imposes a new mandatory requirement on applicants and does not purport to interpret any legal provision. *See* Establishing Exceptional Circumstances for Rescheduling Affirmative Asylum Interviews ("You must establish exceptional circumstances in order to reschedule your asylum interview.").[4] Defendants' own cited cases make this distinction clear. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*, 785 F.3d 710, 717 (D.C. Cir. 2015) (concluding that notice was merely "a statement of agency policy" because it "does not impose any obligation or prohibition on regulated entities") (internal citation omitted)*; Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) ("The Letter was purely informational in nature; it imposed no obligations and denied no relief.").

The Inadequate Notice Policy, although unpublished, is also the consummation of agency decision-making because it represents a sharp departure from prior policy and has been implemented across the country. *See* TRO at 11-12. As Defendants acknowledge, the Affirmative Asylum Procedures Manual ("AAPM") sets out the procedure for providing interview notice. Opp.at 3; AAPM § II.G.3.[5] Contrary to Defendants' description of the AAPM as "a loose set of practices," Opp. at 3, the Manual provides specific instructions and timelines, including that notice of an interview be generated within 21 or 22 days prior to the interview at minimum and that such notice be physically mailed to the applicant and their representative of record "no fewer than 18 days before the scheduled interview date." AAPM § II.G.3. Exceptions are permitted only "in particular cases at the discretion of the Director for special circumstances, *as long as the applicant*

[4] Available at https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/establishing-exceptional-circumstances-for-rescheduling-affirmative-asylum-interviews.

[5] Available at https://www.uscis.gov/sites/default/files/document/guides/AAPM.pdf.

*receives adequate notice of the interview*." *Id.* (emphasis added). Defendants do not dispute that unaccompanied children are receiving significantly less notice than contemplated in the AAPM. Nor do Defendants assert—much less offer evidence—that the USCIS Director made case-by-case determinations that special circumstances warrant reduced notice in every case where notice was generated less than 21 days prior to the interview. As Plaintiffs' experiences amply demonstrate, USCIS policy on notice for unaccompanied child applicants has significantly changed and "the absence of a written memorialization by the agency does not defeat finality." *Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 100 (D.C. Cir. 2020); *see also Am. Fed'n of Teachers v. Bessent*, 765 F. Supp. 3d 482, 496-97 (D. Md. 2025); TRO at 20.[6]

Finally, Defendants' suggestion that USCIS's policies do not have legal consequences because they are the "first step" in an asylum adjudication, Opp. at 11, misunderstands the nature of Plaintiffs' challenge. USCIS's policies are the consummation of USCIS's decision-making on the critical issues of how much notice unaccompanied children and their counsel receive before interviews and the standard to reschedule those interviews. These final scheduling decisions have immediate legal consequences for Plaintiffs separate from USCIS's ultimate adjudication. They prevent Plaintiffs from offering meaningful representation to their child clients and require children to appear at the interview time, regardless of how much notice they received and even if they were just discharged from the hospital, or face dismissal of their applications. 8 C.F.R. § 208.10. *See* TRO at 13-14, 21*; see also U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 599 (2016) (courts take a "pragmatic approach" to finality) (internal citation omitted).[7] Regardless of the final outcome of individual asylum applications, Plaintiffs are immediately

---

[6] Plaintiffs cited public reporting on the existence of a September 23, 2026, memo on shortened notice for unaccompanied children as additional evidence that a policy exists, but this memo is not necessary to establish final agency action given that the policy has already been implemented in practice. *See* TRO at 12 n.6, 20. Notably, Defendants do not deny the existence of this memo.

[7] Defendants appear to ask the Court to defer to USCIS's determination that their policies are not final agency action but have produced no evidence as to USCIS's classification of these actions. Opp. at 11. USCIS presents its scheduling decisions as final and mandatory for applicants.

affected by the burden on their operations and their child clients bear the consequences of having to recount traumatic experiences to a stranger without time to prepare and without trusted counsel. *See* TRO at 16-19. Moreover, the inability to prepare for interviews and submit supplemental evidence impede children's chances of success at their one asylum interview before USCIS.

3. USCIS's Challenged Policies Are Arbitrary and Capricious.

Defendants offer no reasoned justification for the Inadequate Notice Policy and the only explanation provided for the Exceptional Circumstances Policy rests on a misreading of the relevant statute and regulation. "[A]n unexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice." *Encino Motorcars, LLC v. Navaro*, 579 U.S. 211, 222 (2016) (internal citation and alterations omitted).

The Inadequate Notice Policy represents the epitome of arbitrary and capricious agency action. Defendants offer no explanation at all for USCIS's decision to radically depart from prior notice policy for unaccompanied children specifically.[8] Nor do Defendants claim to have considered key factors before changing their notice policy, such as the interaction of this notice policy with USCIS's own evidence submission rules,[9] the impact on vulnerable unaccompanied children, Congressional intent to protect unaccompanied children's access to counsel and to a non-adversarial asylum process, and the serious reliance interests at stake. In any event, it is impossible to harmonize USCIS's policy with its statutory responsibilities. *See* TRO at 22-25; *see also Dep't of Homeland Security v. Regents*, 591 U.S. 1, 30 (2020); *Jimenez-Cedillo v. Sessions*, 885 F.3d 292, 298 (4th Cir. 2018) ("At a minimum, an agency must display awareness that it is changing position and show that there are good reasons for the new policy") (internal citation omitted).

The sole justification Defendants provide for the Exceptional Circumstances Policy is that

[8] Defendants reference their "last-in, first-out policy" but that policy is not at issue. Opp. at 13.

[9] As discussed in the following section, the evidence submission deadline in 8 C.F.R. § 208.9 applies to unaccompanied children. In any event, there is no dispute that all applicants are subject to USCIS's new online policy requiring that evidence be submitted 14 days prior to the interview. *See* TRO at 12-13; USCIS, *ALERT: Updated Evidence Submission Policy for Affirmative Asylum Applications*, https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum.

it is purportedly required by 8 U.S.C. § 1158(d)(5)(A)(v) and 8 C.F.R. § 208.10. *See* Opp. at 4, 13. This is a misreading of the statute and regulation. Both provisions state that exceptional circumstances are required if an applicant *fails to appear* for an interview "without prior authorization." That an unauthorized failure to appear can be excused only based on exceptional circumstances in no way implies that a request to reschedule *before* the interview must meet the same exacting standard. To the contrary, the statute presents these as two separate options. *See* 8 U.S.C. § 1158(d)(5)(A)(v) (referencing an applicant who "fails without prior authorization *or* in the absence of exceptional circumstances to appear for an interview") (emphasis added).

"It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983). Because the agency has articulated no basis for the Inadequate Notice Policy, it cannot be upheld as a reasonable exercise of agency authority. The Exceptional Circumstances Policy fares no better because the only articulated justification relies on an incorrect interpretation of the law. "[A]n agency action 'may not stand if the agency has misconceived the law.'" *Sierra Club v. State Water Control Board*, 64 F.4th 187, 194 (4th Cir. 2023) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943))*; see also Sea-Land Service, Inc. v. Dep't of Transportation*, 137 F.3d 640, 646 (D.C. Cir. 1998) ("An agency action, however permissible as an exercise of discretion, cannot be sustained where it is based not on the agency's own judgment but on an erroneous view of the law.") (internal citation omitted).[10]

Finally, Defendants are wrong to suggest that policies regarding the processing of asylum applications are immune from APA review. *See, e.g., Dorcas Int'l Inst. of Rhode Island v. USCIS*, 834 F. Supp. 3d 242, 271, 285 (D.R.I. 2026) (reviewing policy suspending adjudications of certain asylum applications). Defendants cite 8 U.S.C. § 1158(d)(1) for the proposition that "Congress by and large left the particulars of how to process asylum applications up to the discretion of DHS

[10] Even if USCIS were correct in its statutory interpretation, this would not excuse its responsibility to consider reliance interests engendered by its prior "good cause" rescheduling policy or to assess whether reasonable alternatives are available. *See Regents*, 591 U.S. at 33; TRO at 10.

and EOIR." Opp. at 13. But that statute merely reflects Congressional intent that asylum applications be processed under generally applicable procedures rather than ad hoc exercises of discretion. *See* 8 U.S.C. § 1158(d)(1) ("The Attorney General *shall* establish a procedure for the consideration of asylum applications . . .") (emphasis added).

USCIS has established procedures for adjudicating asylum applications through its regulations, 8 C.F.R. § 208.1, *et seq*, and the AAPM. *See* TRO at 6-8, 10; Opp. at 3-4. Because "the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). Any change in policy and procedure must comply with the APA. *See, e.g., League of Women Voters v. USCIS*, 839 F. Supp. 3d 292, 342 (D. Md. 2026) ("[T]he reversal of a broadly applied policy is not a decision that is traditionally unreviewable," and even policies within agency discretion are "still subject to review to ensure the agency stayed within its limits under the Constitution and APA.").

4. <u>USCIS's Challenged Policies Are Not In Accordance With Law</u>

The Inadequate Notice and Exceptional Circumstances policies are contrary to law because they deprive unaccompanied child applicants of their regulatory right to submit supplemental evidence up to 14 days before their asylum interviews, deprive children of access to counsel, and are inconsistent with the TVPRA. *See* TRO at 25–27.

In response to Plaintiffs' argument regarding supplemental evidence, Defendants contend that (1) the regulation in question, 8 C.F.R. § 208.9(e)(1), does not apply to the cases of unaccompanied children and (2) supplemental evidence is not *necessary* to apply for asylum. Opp. at 12. Both arguments fail.

Defendants offer no explanation for their contention that USCIS considers unaccompanied child applications "under 8 U.S.C. § 1158(b)(3)(C), not 8 C.F.R. § 208.2(a)(1)(i)." Opp. at 12. As discussed above, USCIS's regulations at 8 C.F.R. § 208.1 *et seq.* serve to implement the asylum statute, 8 U.S.C. § 1158. The statute and regulations are complementary, not alternatives. The structure of the regulations makes this clear. 8 C.F.R. § 208.1 provides: "Unless otherwise provided in this chapter I, this subpart A shall apply to all applications for asylum under section

208 of the Act." Section 208 of the Immigration and Nationality Act is codified at 8 U.S.C. § 1158. *See Garcha v. DHS*, No. 25-cv-07215, 2026 WL 747457, at *7 (N.D. Cal. Mar. 17, 2026). The following section, 8 C.F.R. § 208.2(a), specifies USCIS's initial jurisdiction over asylum applications. 8 C.F.R. § 208.9 then sets out procedures for asylum applications within USCIS jurisdiction under § 208.2(a). *See* 8 U.S.C. § 1158(d)(1); 8 C.F.R. § 208.9(a).

The 14-day evidence submission rule in 8 C.F.R. § 208.9(e)(1) applies to "applications being considered under § 208.2(a)(1)(i)." 8 CFR § 208.2(a)(1) provides for initial USCIS jurisdiction over all asylum applications filed by noncitizens "physically present in the United States or seeking admission at a port-of-entry," unless a specific exclusion applies. This is the applicable jurisdictional provision for Plaintiffs' unaccompanied child clients because they are physically present in the United States and filing affirmative asylum applications.[11] Exclusions from initial USCIS jurisdiction are specified in paragraphs (b) and (c) of 8 C.F.R. § 208.2. But these exclusions do not apply to unaccompanied child applicants because they are guaranteed access to the initial jurisdiction of USCIS in all cases. *See* 8 U.S.C. § 1158(b)(3)(C).

To the extent Defendants argue that the applications of unaccompanied children are not processed pursuant to USCIS's "initial jurisdiction" specified at 8 C.F.R. § 208.2(a), this would imply that no regulatory procedures apply to their applications at all. *Cf.* 8 C.F.R. § 208.9(a) ("USCIS shall adjudicate the claim of each asylum applicant whose application is complete . . . and is within the jurisdiction of USCIS pursuant to § 208.2(a)."). Nothing in the statute or regulation requires such an absurd result. Notably, Defendants themselves take the position that regulations within the same subpart apply to unaccompanied child cases. *See, e.g.,* Opp. at 4 (citing

---

[11] A different evidence submission rule applies to "applications being considered under § 208.2(a)(1)(ii)." 8 C.F.R. § 208.9(e)(2). 8 C.F.R. § 208.2(a)(1)(ii) applies to individuals who have received a positive credible fear determination, a process that does not apply to unaccompanied children because they are exempt from expedited removal and generally entitled to full removal proceedings under Section 240 of the Immigration and Nationality Act. *See* 8 U.S.C. §§ 1232(a)(2)(B), (5)(D).

8 C.F.R. § 208.10), *id.* at 12 (citing 8 C.F.R. § 208.9(b)).[12]

Given that 8 C.F.R. § 208.9(e)(1) applies to the cases of Plaintiffs' unaccompanied child clients, USCIS cannot lawfully deprive them of their regulatory right to submit supplemental evidence up to 14 days in advance of the asylum interview. *See* TRO at 25–26. That an applicant *might* be able to meet their burden through testimony alone or an adjudicator *might* permit later-submitted evidence does not give USCIS free reign to ignore its own regulations. In practice, USCIS refuses to consider late-submitted evidence, especially after its August 21, 2026, "Updated Evidence Submission Policy for Affirmative Asylum Applications." *See* n.9, *supra*; TRO at 13. Updated evidence is often critical for children who cannot fully articulate their claims alone. *See* TRO at 13; Avila-Cimpeanu Decl. ¶ 19, ECF No. 23-8; Nally Decl. ¶ 14, ECF No. 23-7.

Additionally, the Inadequate Notice Policy targeted at unaccompanied children is fundamentally contrary to USCIS's statutory obligation to "take into account the specialized needs of unaccompanied [] children" in considering their applications for asylum. 8 U.S.C. § 1232(d)(8); Defendants' sole response to this statutory argument is that "[a]sylum officers are trained to use 'child-sensitive questioning and listening techniques'" during interviews. Opp. at 12 (quoting TRO at 6). But Congress specified that USCIS must consider children's specialized needs in "*both* procedural and substantive aspects of handling" their asylum cases. 8 U.S.C. § 1232(d)(8) (emphasis added). Singling out unaccompanied children for inadequate notice and depriving them of the opportunity to submit supplemental evidence is incompatible with consideration of children's specialized needs. This violation is compounded by USCIS's refusal to reschedule interviews to permit time for preparation and attendance of counsel. *See* 8 C.F.R. § 208.9(b); *see also Rodriguez-Solis v. Blanche*, 177 F.4th 266, 274 (4th Cir. 2026) (noting the government's position "trivializ[ed] the important work of immigration lawyers.").

---

[12] Defendants also reference 8 C.F.R. § 208.5, which encourages expedited consideration of applications of individuals in the custody of the Department of Homeland Security ("DHS."). Opp. at 7. This provision does not apply to unaccompanied child cases because unaccompanied children are in the custody of the Office of Refugee Resettlement, not DHS. TRO at 4; 8 U.S.C. § 1232(b).

**D. The Balance of Equities and the Public Interest Strongly Favor Plaintiffs.**

A stay is in the public interest because USCIS's actions "upend[] decades of established, relied-upon procedures" and "create[] hardship for children and non-profit legal service providers." TRO at 27. Defendants resist this conclusion by arguing that Plaintiffs, regardless of this Court's action, would remain strapped for "time and or resources" and that USCIS would be limited in its "operational judgment." *Cf.* Opp. at 16. But Defendants offer no justification for USCIS's policy changes and no explanation of how its new policies better serves USCIS's operational needs than the agency's prior policies.

Prior to the implementation of the challenged policies, the status quo was such that the agency's procedures enabled Plaintiffs to effectively represent their unaccompanied child clients. A return to that status quo is precisely the kind of interim relief that serves the public interest. *See, e.g.*, *Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928, 969–70 (D. Md. 2020); *Maryland v. Noem*, 823 F. Supp. 3d 560, 572 (D. Md. 2026) ("[A] pause in [a government project] will do nothing more than prolong the status quo until more robust briefing and a hearing can occur, which is, of course, the very point of a TRO."). However broadly they may like to exercise their operational judgment (which the status quo did not limit in any event), Defendants do not have an interest in "flout[ing] the law." *Am. Fed'n of State, City, & Mun. Emps., AFL-CIO v. Soc. Sec. Admin*, 771 F. Supp. 3d 717, 808 (D. Md. 2025); *Asylum Seeker Advoc. Project v. USCIS*, 808 F. Supp. 3d 708, 721 (D. Md. 2026). The balance of the equities and public interest favor Plaintiffs.

**E. Plaintiffs Are Entitled to a Universal Stay.**

Defendants do not dispute that, if relief is granted as to the Inadequate Notice Policy and Exceptional Circumstances Policy, the ordinary and most appropriate remedy under 5 U.S.C. § 705 is a universal stay of these policies, not limited to the named Plaintiffs. *See* TRO at 28.

**III. CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for a stay and temporary restraining order.

Dated: October 28, 2026

Respectfully submitted,

NATIONAL CENTER FOR YOUTH LAW

*/s/ Diane de Gramont*
Diane de Gramont, *pro hac vice*
Mishan Wroe, *pro hac vice*
428 13th Street, Floor 5
Oakland, CA 94612
Telephone: (510) 920-8098
ddegramont@youthlaw.org

TRIAL IMPACT PROJECT

/s/*Marjorie J. Menza*
Marjorie J. Menza, *pro hac vice*
Sara Haji, *pro hac vice*
523 W. 6th Street
Suite 450
Los Angeles, CA 90014
Direct: (213) 259-2507
Main: (213) 542-5241
mmenza@trialimpact.org

NATIONAL IMMIGRATION LAW CENTER

*/s/ Kevin Siegel*
Kevin Siegel, *pro hac vice*
Lynn Damiano Pearson, *pro hac vice*
Hannah K. Comstock, *pro hac vice*
P.O. Box 34573, Washington, DC 20043
Telephone: (213) 674-2907
siegel@nilc.org

CENTER FOR GENDER AND REFUGEE STUDIES

*/s/ Melissa Crow*
Melissa Crow (Bar No. 15622)
1901 Pennsylvania Avenue, NW
Suite 900, PMB 228
Washington, DC 20006
Telephone: (202) 355-4471
crowmelissa@uclawsf.edu

*/s/ Robert Pauw*
Robert Pauw* (WA Bar No. 13613)
c/o Gibbs Houston Pauw
1000 Second Avenue, Suite 1600
Seattle, WA 98104
Telephone: (206) 682-1080
rpauw@ghp-law.net
* *Pro hac vice* motion pending