**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| The Door, *et al.*,<br><br>Plaintiffs,<br>vs.<br><br>Joseph B. Edlow, *et al.*,<br><br>Defendants. | Case No. 26-CV-04326-BAH |

**PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY;**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Plaintiffs respectfully move for an order requiring Defendant Executive Office for Immigration Review ("EOIR") to produce, by November 25, 2026, the administrative record for its policy instructing immigration judges to complete their unaccompanied children's dockets by a date certain (the "Detained Docket Deadline"). If Defendants deny that such a policy or practice exists, and by extension that an administrative record exists, Plaintiffs request an order requiring EOIR to produce communications to immigration judges that convey guidance, expectations, or requirements concerning the scheduling of unaccompanied children's cases, as described in Exhibit A.

## I. INTRODUCTION

Across the country, immigration judges are repeating the same thing to the children appearing before them: their hands are tied. Judges who once routinely gave unaccompanied children months to prepare and file asylum applications, typically after release from custody and with time to seek legal counsel, now say they have no discretion to grant continuances longer than three weeks. ECF 1 ¶¶ 60, 80. The reason, they explain, is that they are under orders to

complete every unaccompanied child's removal case by a date certain—a date that invariably falls on or before January 31, 2027—and they cannot schedule any hearing in those cases after that date. *Id.* ¶¶ 81–82. As a result, children who have only just arrived in federal custody, often after harrowing journeys and far from their families, are told they must keep pace or risk having their asylum claims deemed abandoned. *Id.* ¶ 82. These children must disclose their most painful experiences to attorneys they have just met, file asylum applications within days or weeks, and then barrel toward final hearings that must end before the Detained Docket Deadline. *Id.* ¶¶ 82–85, 89.

Plaintiffs and their child clients feel the effects of the Detained Docket Deadline in courtrooms every day. Defendants, meanwhile, have kept the policy itself behind closed doors. EOIR has issued no rule and published no memorandum indicating when the Detained Docket Deadline was adopted, who adopted it and at whose direction, what dates it sets, or why. Nor has EOIR said what, if anything, it considered about the children whose cases the Detained Docket Deadline accelerates or the attorneys who represent them. To date, Defendants have referred to the policy only as Plaintiffs' "alleged" Detained Docket Deadline and have dismissed the policies challenged in this case as "some amorphous mix of the agencies' standard operations." ECF 32-1 at 3.

That is also the position Defendants took in opposing Plaintiffs' motion for a temporary restraining order ("TRO"), when they told this Court that the USCIS policies at issue "do not exist." *Id.* at 11. Four days later, Defendants moved for reconsideration of the Court's TRO with a sworn declaration from a USCIS associate director describing and defending the very policies they had said did not exist. *See* ECF 57 at 4–7. Although that declaration repeatedly alludes to expedited processing of asylum applications and "[e]fficient coordination between the

affirmative asylum process and immigration court proceedings," ECF 57-1 at ¶ 14, neither it nor Defendants' briefs explain EOIR's side of that coordination.

Plaintiffs will move to preliminarily enjoin and stay the Detained Docket Deadline on November 12, 2026.[1] According to several immigration judges, the Detained Docket Deadline should arrive as early as the end of December 2026—less than two months from now. Once that deadline passes, the children's cases it targets will have been hurried to completion, and many children will have been ordered removed without meaningful access to the asylum process. Although Plaintiffs will submit declarations and other evidence showing that immigration judges are, in fact, referring to and relying on a Detained Docket Deadline, the Court should not have to decide whether to preserve the status quo while the documents explaining the government's departure from it remain in Defendants' files.

The Court should therefore order EOIR to produce the administrative record for the Detained Docket Deadline by November 25, 2026. If EOIR adopted the Detained Docket Deadline through a formal process, that record already exists and can be readily produced. If it did not, and the Detained Docket Deadline was conveyed to judges informally, then the communications conveying it should be simple to locate and will be captured in Plaintiffs' single request for production (RFP) at Exhibit A. And "[i]f the alleged change in policy did not, in fact, occur, then Defendants should have no opposition to maintaining the status quo." ECF 54 [Order Granting TRO] at 11 n.7. Irrespective of how EOIR established or adopted the Detained Docket Deadline, Plaintiffs ask only that the Court require Defendants to produce the material

[1] Although Plaintiffs call this policy the Detained Docket Deadline, their forthcoming motion for preliminary injunction and stay will show that the policy has since expanded to include non-detained children.

underpinning that decision—or at least communicating it—when it will be most useful: while the Court is deciding Plaintiffs' motion for a preliminary injunction.

## II. BACKGROUND

### A. EOIR's Detained Docket Deadline Forces Detained Children Through Removal Proceedings Without Meaningful Access to the Asylum Process.

Federal law guarantees unaccompanied children special protections in the asylum process. An unaccompanied child seeking asylum cannot be removed until USCIS adjudicates the child's asylum application, and a child who wishes to subsequently present that asylum claim to an immigration judge is entitled to do so. ECF 1 ¶ 58. For that reason, immigration judges historically allowed unaccompanied children to pursue affirmative relief before moving forward with removal proceedings, regularly granting continuances of several months so children could file asylum applications with USCIS, and then administratively closing or terminating removal proceedings while USCIS adjudicated those applications. *Id.* ¶¶ 59–60. These docket management tools gave children "time and space to gather evidence supporting their asylum applications," consistent with the requirement that children be able to develop their claims under child-sensitive circumstances. *Id.* ¶ 61.

That changed in early 2026. In or around April 2026, immigration judges began refusing to grant continuances longer than three weeks in Plaintiffs' unaccompanied children's cases, with some stating outright that they have no discretion to do otherwise. *Id.* ¶ 80. Immigration judges across the country have told Plaintiffs and other legal service providers this is because judges are under orders to complete all unaccompanied children's removal cases by a date certain and cannot schedule any hearing in any such case after that date. *Id.* ¶ 81. The date varies from court to court, but it is invariably on or before January 31, 2027. *Id.* ¶¶ 81, 146. To meet this deadline, judges deny longer continuances even when they acknowledge that a child is

prima facie eligible for relief, and they order children to immediately initiate the affirmative asylum process or risk having their claims deemed abandoned—all shortly after removal proceedings begin and while the child remains in the custody of the Office of Refugee Resettlement ("ORR"). *Id.* ¶ 82.

The consequences for children are irreversible. Because of the Detained Docket Deadline, at least eight clients of Plaintiff Florence Immigrant and Refugee Rights Project have been ordered removed before they could pursue all available relief. *Id.* ¶ 98. Clients of Plaintiff Jewish Family and Community Services are being "rushed through EOIR proceedings," and those proceedings are consuming the majority of its attorneys' work weeks to the detriment of their other clients. *Id.* ¶ 102. In the hands of an immigration judge today, unaccompanied children "are all but guaranteed to be deprived of meaningful access to the asylum process by the end of January 2027." *Id.* ¶ 85.

B. Plaintiffs Seek Expedited Production of the Administrative Record for One Policy.

Plaintiffs seek a single, targeted production from a single Defendant on a single claim. Count Six of the Complaint alleges that the Detained Docket Deadline is final agency action that is arbitrary and capricious in violation of Section 706(2)(A) of the Administrative Procedure Act ("APA"). *Id.* ¶¶ 144–49. Among other things, Plaintiffs allege that EOIR failed to articulate a reasoned explanation for its change in policy; considered factors Congress did not intend it to consider; failed to consider reasonable alternatives; and failed to consider the reliance interests of Plaintiffs and their clients, the unique vulnerability and needs of unaccompanied children, and the Detained Docket Deadline's impact on Plaintiffs' ability to effectively represent their child clients. *Id.* ¶ 148. The information needed to assess those allegations lies with EOIR, and it is most clearly found in the administrative record.

C. If Defendants Deny the Detained Docket Deadline Exists, Plaintiffs Request a Limited Production of Documents.

In opposing Plaintiffs' motion for a temporary restraining order, Defendants argued that the challenged policies "do not exist" because "there is no policy memo" bearing the defined policy names Plaintiffs used in the Complaint. ECF 32-1 at 3, 11. Several days later, in moving the Court to reconsider its TRO, Defendants described the USCIS policies in detail: asylum officers "may, at their discretion, schedule interviews for UACs [Unaccompanied Alien Children] in ORR custody with 24 hours to seven days' notice," and rescheduling "is limited to situations involving 'exceptional circumstances.'" ECF 57 at 4.

Plaintiffs do not know which approach Defendants will take with the Detained Docket Deadline. To the extent Defendants fear the Court will enter a preliminary injunction "without adequately considering" EOIR's rationales or will act "based on the say so of Plaintiffs," as Defendants argue occurred with the TRO, *see id.* at 2, 10, expedited production of the administrative record would allow the agency to place those rationales before the Court. If Defendants deny the Detained Docket Deadline exists, however, Plaintiffs request that the Court order EOIR to produce the following (with capitalized terms defined at Ex. A):

> All COMMUNICATIONS received by one or more IMMIGRATION JUDGES from January 1, 2026 to the present that convey, describe, or implement CATEGORICAL guidance, instructions, expectations, practices, or directives CONCERNING the SCHEDULING of UNACCOMPANIED CHILD CASES.[2]

[2] The request also makes clear that it does not seek to sweep in individual correspondence about specific cases: "This Request does not seek COMMUNICATIONS CONCERNING the SCHEDULING of only one or more individually identified cases, unless the COMMUNICATION refers to or applies a CATEGORICAL deadline, target date, limitation, or instruction." Ex. A.

Given the timelines at issue, this limited request for production ensures EOIR does not "shield its decisions from judicial review" simply by arguing that "no express memorialization of a policy change exists." *See* ECF 54 at 11 n.7. As the Court explained in granting the TRO, "[s]uch an attempt to sidestep the framework of judicial review set forth in the APA is not permitted." *Id.*

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 26, district courts have broad discretion to order expedited discovery in the form of document requests and depositions. *See ClearOne Advantage, LLC v. Kersen*, 2024 WL 278917, at *1 (D. Md. Jan. 25, 2024); *IOMAXIS, LLC v. Hurysh*, 2022 WL 180734, at *4 (D. Md. Jan. 20, 2022); *see also* Local Rule 104.4. Expedited discovery is "particularly appropriate where a preliminary injunction is sought." *Blades of Green, Inc. v. Go Green Lawn & Pest, LLC*, 2022 WL 326473, at *10 (D. Md. Feb. 3, 2022) (quoting *L'Occitane, Inc. v. Trans Source Logistics, Inc.*, 2009 WL 3746690, at *1 (D. Md. Nov. 2, 2009)); *accord Courthouse News Serv. v. Harris*, 2022 WL 3577255, at *4 (D. Md. Aug. 18, 2022).

The Fourth Circuit has not established a standard to evaluate requests for expedited discovery, but courts in this District consistently apply a reasonableness standard, "determining whether the request is supported by good cause, considering the totality of the circumstances." *ClearOne Advantage*, 2024 WL 278917, at *1 (quoting *Brightview Grp., LP v. Teeters*, 2019 WL 11660174, at *1 (D. Md. Nov. 6, 2019)). Courts consider seven non-exhaustive factors to evaluate good cause: "(1) whether a preliminary injunction motion is pending; (2) the breadth of the requested expedited discovery; (3) the proffered reasons for the expedited discovery; (4) the burden on the opponent to comply with the request for expedited discovery; (5) whether the evidence sought could be obtained more efficiently from some other source; (6) the extent to

which the discovery process would be expedited; and (7) whether a motion to dismiss for failure to state a claim is pending." *Abrego Garcia v. Noem*, 348 F.R.D. 589, 591 (D. Md. 2025) (citing *Courthouse News Serv.*, 2022 WL 3577255, at *4).[3] Applying those factors regularly leads courts in this District to grant expedited discovery. *See, e.g.*, *id.* at 593–94; *ClearOne Advantage*, 2024 WL 278917, at *1; *Courthouse News Serv.*, 2022 WL 3577255, at *4; *Blades of Green, Inc.*, 2022 WL 326473, at *10–11.

In an APA case, judicial review "is to be based on the full administrative record that was before the [agency] at the time [it] made [its] decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). Unlike in some other districts, where local rules tie production of the administrative record to the filing of an answer or dispositive motion, *see, e.g.*, D.D.C. LCvR 7(n), this Court's Local Rules do not prescribe when an administrative record must be produced. The timing of that production is thus left to the Court's broad discretion over the sequence of discovery. *See ClearOne Advantage*, 2024 WL 278917, at *1.

---

[3] A minority of courts in this District have instead looked to four factors: "[1] the procedural posture of the case; (2) whether the discovery at issue is narrowly tailored to obtain information that is probative to the preliminary injunction analysis; (3) whether the requesting party would be irreparably harmed by waiting until after the parties conduct their Rule 26(f) conference; and (4) whether the documents or information sought through discovery will be unavailable in the future or are subject to destruction." *Mayor & City Council of Balt. v. Consumer Fin. Prot. Bureau*, 775 F. Supp. 3d 921, 944 (D. Md. 2025) (citing *Chryso, Inc. v. Innovative Concrete Sols. of the Carolinas, LLC*, 2015 WL 12600175, at *3 (E.D.N.C. June 30, 2015)).

Plaintiffs satisfy that formulation, too. The first two factors mirror those of the reasonableness standard, and Plaintiffs address them below. *See infra* Section IV.A, B. As to the third, Plaintiffs would be irreparably harmed by waiting until a scheduling order is entered (*see* Local Rule 104.4) because the Detained Docket Deadline likely will have passed and the detained children's cases it governs will have been completed. *See* ECF 1 ¶¶ 81, 85, 98. As to the fourth factor, Plaintiffs do not contend that the documents are at risk of destruction, but absent an order from this Court, they will be unavailable before the Detained Docket Deadline arrives. At bottom, these factors are alternate guides to the same totality-of-the-circumstances inquiry.

## IV. GOOD CAUSE EXISTS TO EXPEDITE DEFENDANTS' PRODUCTION OF THE ADMINISTRATIVE RECORD

Taken together, the good-cause factors justify expediting production of the administrative record, or, if Defendants represent it does not exist, expediting a limited production of documents in its stead.

### A. *Factors 1 & 2:* The Requested Discovery Is Narrowly Tailored to One Policy That Plaintiffs Will Imminently Move to Enjoin Or Stay.

Because Plaintiffs will move for a preliminary injunction on November 12, 2026, expedited discovery is "particularly appropriate" here. *Blades of Green*, 2022 WL 326473, at *10 (quoting *L'Occitane*, 2009 WL 3746690, at *1); *see also Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Dep't of Lab.*, 349 F.R.D. 243, 249 (D.D.C. 2025) (factor weighed in favor of expedited discovery where plaintiffs "intend[ed] to file a preliminary injunction motion imminently" and had been ordered to do so by a date certain).

Plaintiffs' request is also narrowly "tailored to obtain information relevant to a preliminary injunction determination." *Blades of Green*, 2022 WL 326473, at *10 (quoting *L'Occitane*, 2009 WL 3746690, at *2). Unlike movants in other cases, Plaintiffs are not seeking interrogatories, depositions, or even the administrative record underlying their other claims in this case. Plaintiffs' Request No. 1 seeks only the administrative record on which the Court's review of Count Six will rest. Ex. A; *see Overton Park*, 401 U.S. at 420. And Request No. 2 applies only if EOIR denies that the Detained Docket Deadline exists. It also expressly excludes communications about individual cases, seeking instead the categorical scheduling guidance impacting all unaccompanied children's cases which immigration judges have received this year. *See IOMAXIS*, 2022 WL 180734, at *4 (granting expedited discovery "tailored to obtain information relevant to a determination of whether [d]efendants should be enjoined").

Courts regularly authorize far broader expedited discovery than what Plaintiffs request here, including against federal defendants. In *Abrego Garcia*, the court permitted fifteen interrogatories, fifteen document requests, and the depositions of four government declarants, with written responses due in five days. 348 F.R.D. at 599–602. In *American Federation of Labor*, an APA case in which the existence and scope of the challenged agency policies were disputed, the court allowed interrogatories, seven document requests, and four Rule 30(b)(6) depositions before the plaintiffs moved for a preliminary injunction. 349 F.R.D. at 250–53. And the court in *Blades of Green* ordered responses to five document requests within ten days. 2022 WL 326473, at *11.

B. *Factor 3:* The Record Will Show the Court What the Detained Docket Deadline Is and Why EOIR Adopted It.

Because judicial review of an APA claim rests on the administrative record, *see Overton Park*, 401 U.S. at 420, the record is plainly relevant to Count Six. More than relevant, however, the record will address two central parts of Plaintiffs' forthcoming preliminary injunction motion.

*First*, the record will allow the Court to "ascertain the contours of the precise policy at issue." *Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018) (quoting *Venetian Casino Resort, L.L.C. v. Equal Emp. Opportunity Comm'n*, 530 F.3d 925, 928 (D.C. Cir. 2008)). As this Court has explained, agency action need not be written down to be final and reviewable. ECF 54 at 11 & n.7. And Plaintiffs' declarations from attorneys who appear before immigration judges every day will show that the Detained Docket Deadline is real and binding. But either the administrative record or, in its stead, documents setting and communicating the policy will show the Court what EOIR instructed, who instructed it, what dates it sets, and how it limits judges' discretion. *See All. for Retired Ams. v. Bessent*, 2025 WL 1114350, at *3 (D.D.C. Mar. 20,

2025) (granting expedited discovery because "unlike the typical APA case, which involves the enactment of a rule or other agency action taken in public view—only the [d]efendants know the 'contours' of [the challenged] actions"); *id.* at *4 (granting expedited discovery "for the important and proper purpose of discerning the exact nature of the otherwise-opaque administrative action they are challenging").

*Second*, the record will reveal what EOIR considered (and failed to consider) in adopting the Detained Docket Deadline. Although immigration practitioners know that the Detained Docket Deadline exists, and Plaintiffs will establish additional facts through their own declarations and those of witnesses, Plaintiffs expect the administrative record will confirm that: (1) EOIR failed to consider important aspects of the problem, including the unique vulnerabilities of unaccompanied children and the Detained Docket Deadline's effect on their ability to seek asylum; (2) the Detained Docket Deadline was motivated by factors Congress did not intend for EOIR to consider; and (3) EOIR failed to consider Plaintiffs' reliance interests. *See City of Columbus v. Kennedy*, 839 F. Supp. 3d 353, 365 (D. Md. 2026) (Hurson, J.) (citing *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

C. *Factors 4 & 5:* The Burden on EOIR Is Minimal, and the Documents Are Available Only From EOIR.

Plaintiffs ask EOIR only to produce the record it must eventually produce in this case. *See Courthouse News Serv.*, 2022 WL 3577255, at *5 (producing data underlying defendants' own position "would not impose a substantial burden"); *Am. Fed'n of Lab.*, 349 F.R.D. at 252–53 (written discovery and limited depositions not unduly burdensome). And the universe of responsive documents is likely small, whether EOIR adopted the Detained Docket Deadline through a deliberative process, drafted talking points that were read over the phone, or simply sent an email. Indeed, Defendants evidently have already begun searching for some of the same

documents in ongoing Freedom of Information Act litigation. *See Young Ctr. for Immigrant Children's Rights v. Dep't of Justice*, No. 1:26-cv-02118 (TJK) (D.D.C. June 16, 2026), ECF 1 at 3–5.

The documents are also available only from EOIR. Plaintiffs know what immigration judges have said from the bench, but they cannot obtain the instructions those judges are following, or the reasons behind them, without EOIR's own documents. Expedited discovery is warranted where, as here, "[t]he information is clearly relevant, but it is unavailable to [plaintiff] from other sources." *Courthouse News Serv.*, 2022 WL 3577255, at *5; *see also ClearOne Advantage*, 2024 WL 278917, at *1.

D. *Factors 6 & 7*: The Requested Timeline is Reasonable, and No Motion to Dismiss Is Pending.

Plaintiffs ask for production by November 25, 2026—sixteen days from the filing of this motion. Because this Court's Local Rules set no deadline for producing an administrative record, Plaintiffs are not asking the Court to override a default schedule but only to set one when the record will be most useful. And the timeline here is more generous than those other courts have set for more cumbersome discovery. *See, e.g.*, *Abrego Garcia*, 348 F.R.D. at 602 (one day); *Blades of Green*, 2022 WL 326473, at *11 (ten days).

Finally, Defendants have not moved to dismiss Count Six or any other cause of action, so there is no risk that the claim on which Plaintiffs seek discovery will imminently be dismissed.

## V. CONCLUSION

The Detained Docket Deadline will arrive in some immigration courts as early as the end of December 2026 and in every court by January 31, 2027. Once it passes, an injunction or stay may be too late to restore meaningful access to the asylum process for the children whose immigration cases are currently being rushed to completion. The limited production Plaintiffs

seek will assist the Court in deciding whether to stay the policy before that happens. *See Blades of Green, Inc.*, 2022 WL 326473, at *10 (finding good cause for limited expedited discovery in aid of a preliminary injunction); *Am. Fed'n of Lab.*, 349 F.R.D. at 251 (granting expedited discovery "tailored to determining the contours of the agencies' actions that are necessary for deciding a preliminary injunction motion").

For the foregoing reasons, Plaintiffs respectfully request that the Court order Defendant EOIR to produce the administrative record for the Detained Docket Deadline by November 25, 2026. If Defendants represent that there is no Detained Docket Deadline and therefore no administrative record to produce, Plaintiffs ask the Court to order EOIR to produce documents responsive to RFP No. 2 by the same date.

Dated: November 9, 2026

Respectfully submitted,

TRIAL IMPACT PROJECT

/s/ Sara Haji
Sara Haji, *pro hac vice*
Marjorie J. Menza, *pro hac vice*
523 W. 6th Street, Suite 450
Los Angeles, CA 90014
Telephone: (213) 542-5241
shaji@trialimpact.org
mmenza@trialimpact.org

NATIONAL IMMIGRATION LAW CENTER

/s/ Kevin Siegel
Kevin Siegel, *pro hac vice*
P.O. Box 34573
Washington, DC 20043
Telephone: (202) 216-0261
Fax: (202) 216-0266
siegel@nilc.org

CENTER FOR GENDER & REFUGEE STUDIES

/s/ Melissa Crow
Melissa Crow (Bar No. 15622)
1901 Pennsylvania Avenue, NW
Suite 900, PMB 228
Washington, DC 20006
Telephone: (202) 355-4471
crowmelissa@uclawsf.edu

/s/ Robert Pauw
Robert Pauw, *pro hac vice* motion pending
c/o Gibbs Houston Pauw
1000 Second Avenue, Suite 1600
Seattle, WA 98104
Telephone: (206) 682-1080
rpauw@ghp-law.net

NATIONAL CENTER FOR YOUTH LAW

*/s/ Mishan Wroe*
Mishan Wroe, *pro hac vice*
Diane de Gramont, *pro hac vice*
Neha Desai, *pro hac vice*
428 13th Street, Floor 5
Oakland, CA 94612
Telephone: 510.920.8098
mwroe@youthlaw.org
ddegramont@youthlaw.org
ndesai@youthlaw.org

NATIONAL IMMIGRATION LAW CENTER

*/s/Lynn Damiano Pearson*
Lynn Damiano Pearson, *pro hac vice*
Hannah K. Comstock, *pro hac vice*
3450 Wilshire Blvd. #108 – 62
Los Angeles, CA 90010
Telephone: (213) 639-3900
Fax: (213) 639-3911
damianopearson@nilc.org
Comstock@nilc.org