# EXHIBIT 3

**DECLARATION OF MARION DONOVAN-KALOUST ON BEHALF OF PLAINTIFF IMMIGRANT DEFENDERS LAW CENTER IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

1. I, Marion ("Mickey") Donovan-Kaloust, make the following statements on behalf of myself and Immigrant Defenders Law Center ("ImmDef"). I certify under penalty of perjury that the following statements are true and correct.

2. I am over the age of 18 years old and make this declaration based upon my personal knowledge and experience. If called to do so, I could and would competently testify to these matters under oath.

3. I am Director of Legal Services of ImmDef. I have been at ImmDef for approximately 11 years. I incorporate my Declaration in Support of Plaintiffs' Motion for Temporary Restraining Order (Dkt. 23-11) as if fully set forth herein.

**I. ImmDef Has Continued to Experience Scheduling and Notice Issues Before USCIS**

4. Since filing my declaration in support of Plaintiffs' Motion for Temporary Restraining Order, ImmDef has experienced multiple instances of inadequate notice for asylum interviews, especially for detained children but also for non-detained children, as well as inability to reschedule asylum interviews.

5. For example, on October 23, 2026, an ImmDef staff attorney filed an asylum application for a detained child. On Monday, October 26, 2026, the Los Angeles Asylum Office called the attorney to schedule the interview for that same week. The attorney declined all offered dates because she had conflicts on each date. The Asylum Office refused to grant additional time, scheduled the interview for Friday, October 30, 2026, and told her that the interview was required to be scheduled within seven days. The attorney pointed out that Friday is less than seven days from Monday and reiterated that she was unavailable any day that week, but the Asylum Office proceeded with scheduling the interview for Friday. The attorney had an immigration court hearing for another detained child scheduled at the same time as the interview.

I personally had to step in to cover the attorney's hearing because other attorneys were already appearing at other interviews or hearings. Hearing coverage is not a typical part of my role, given my responsibilities as Director of Legal Services, but it is all hands on deck given the expediting of unaccompanied children's cases. The attorney attended the interview with the client, and the officer told her that the application could not be adjudicated, given that the client had not yet attended biometrics because the application was so recently filed. Nevertheless, at the child's next immigration court hearing, the attorney for the Department of Homeland Security notified the court that the application had already been referred back to court, and concurrently filed a Motion to Pretermit the application for asylum. That motion remains pending, and the child's final deportation hearing has been scheduled for November 23, 2026.

6. Another attorney received a call on Friday, October 30, 2026, scheduling sibling clients for an asylum interview on Monday, November 2, 2026. The attorney stated she was not available on Monday and needed additional time to prepare her clients. The officer refused to provide an alternative date and stated the application would be deemed abandoned if she did not appear. Later that morning, the TRO in the instant case was issued, and the attorney sent an email to the Asylum Office requesting reschedule under the terms of the TRO. She got no response and went to the Asylum Office in person on Monday morning with a copy of the TRO to request reschedule. After demanding to speak to a supervisor, she was finally allowed to reschedule the interview and is now awaiting the rescheduled date.

7. From the time my last declaration was filed until the issuance of the TRO on October 30, 2026, ImmDef attorneys continued to receive inadequate notice of asylum interviews for both detained and released unaccompanied children. For example, in addition to the examples cited above, an ImmDef attorney recently received seven days' notice of an interview. Another ImmDef attorney received an asylum interview notice on October 30, 2026, that had a notice date of October 27, 2026, and that scheduled the interview for November 2, 2026. The attorney had not yet even received a receipt notice for the application she had recently mailed.

8. Before the issuance of the TRO, given USCIS's repeated refusals to reschedule interviews and our limited time and capacity to make requests we know will get denied or ignored, ImmDef had generally stopped requesting reschedules and instead attempted to triage cases as best we could. However, in one case, a client who speaks an indigenous language attempted to reschedule based on the lack of availability of an interpreter in his language. The Los Angeles Asylum Office has a policy allowing unaccompanied children to use the "phone monitor" as an interpreter for asylum interviews, but did not have one available on the originally scheduled interview date of September 28, 2026. The Asylum Office told the attorney the interview would be rescheduled due to lack of available "phone monitor" interpreter on that date. On Monday, October 9, 2026, the Asylum Office emailed an interview notice to the attorney for Friday, October 13, 2026—four days later. However, on October 13, 2026, the Asylum Office indicated that there was no interpreter available in the child's best language. The attorney requested to reschedule to allow for availability of an interpreter, but the Asylum Office refused and, over the attorney's objections, forced the child to proceed in Spanish, which is not the child's best language. The child could not understand the officer well in Spanish and had to request clarification of nearly every question.

9. ImmDef has also faced challenges submitting evidence prior to the evidence submission deadline - 14 days before the date of the asylum interview. Although we strive to comply with this deadline, it is not always possible. For example, in one case, a client disclosed information relevant to their asylum matter not included in the declaration that was prepared when the I-589 was filed, several years ago. The attorney attempted to meet with the client to obtain a timely updated declaration; however, the client faced challenges getting to the office to meet with the attorney. The client was finally able to meet with the attorney on October 14, 2026, thirteen days before the scheduled interview on October 27, 2026. The attorney emailed the supplemental declaration to the Asylum Office that same day—October 14, 2026, and requested that it be considered. The attorney received a response from the Asylum Office on October 19, 2026,

indicating that it would not be considered because it was not submitted within fourteen days of the interview. Prior to this policy change, supplemental materials generally had to be submitted one week before the interview, but the consequence of missing the deadline was that the interview might need to be rescheduled *if* the officer needed additional time to review the materials. It was not a blanket policy rejecting any supplemental materials, no matter how brief or how close to the deadline they were submitted.

10. Even after the TRO went into effect, ImmDef attorneys have had to appear at the Asylum Office on the date of the interview to request that the interview be rescheduled, even when the attorney sent an email beforehand, because USCIS was not responding to requests to reschedule. One attorney had to speak to a supervisor, who told her that a new notice would be issued. Another attorney was told by a staff member at the Asylum Office that the client should be physically present to reschedule, even though this attorney explained the TRO. Eventually, a higher-ranked staff member took the TRO, left, and then came back and confirmed the interview would be rescheduled. In another case, on November 4, 2026, I emailed the Asylum Office a request to reschedule the interview of a child whose attorney had recently resigned from ImmDef. We needed additional time to reassign the child to new counsel, given how busy our existing staff is in light of the expedited nature of unaccompanied children's cases currently. I attached a copy of the TRO and explained that the child was entitled to one request to reschedule as of right. I received an autoreply from the Asylum Office indicating that the interview could only be rescheduled for "exceptional circumstances." I have not yet received a substantive reply to my request.

## II. Immigration Courts are Fast Tracking Removal Proceedings for ImmDef's Unaccompanied Child Clients

11. ImmDef is currently representing approximately 60 detained unaccompanied children in their removal proceedings, and another approximately eighteen children who have been released from ORR custody to the Unaccompanied Refugee Minor ("URM") program but nonetheless

remain on the detained docket. We have over 100 unaccompanied child clients who have completed their asylum interviews with USCIS and are awaiting a decision. We expect the vast majority of these children's cases to be referred to Immigration Court in light of the fact that many of our clients' cases, including cases that would have been considered highly likely to be granted under prior administrations, are being referred to Immigration Court within 24 hours to three days of interview.

12. We have observed immigration judges state on the record that they lack control over their docket schedules. For example, in one case an ImmDef attorney moved to continue a hearing set for his unaccompanied child client. The immigration judge denied the motion and stated in his written order that "[t]his case has been identified as a priority case by EOIR and must be completed no later than October 31, 2026." It is not clear what the immigration judge meant by "a priority case" or who set the October 31, 2026 deadline for completion, but the language of the immigration judge's order implies that he himself did not set the deadline, but that it stemmed from some EOIR policy. In another case, on October 27, 2026, an ImmDef attorney requested a continuance to a date in early December given that the proposed date was the week of Thanksgiving and the attorney would be out of the office. The immigration judge indicated she was sympathetic but stated she could not grant the request because she was not able to grant continuances longer than thirty days for detained children. On October 29, 2026, an ImmDef attorney appeared for an Individual Calendar hearing. The attorney was new to the case and had filed a Motion to Substitute Counsel ten days before the hearing. The immigration judge never ruled on the motion, foreclosing the attorney from being able to file additional supplemental evidence in the case via the Immigration Court online filing system ("ECAS"). The attorney repeatedly contacted the immigration judge's clerk and made attempts to file the supplemental materials in other ways but was unsuccessful in getting them accepted by the court. On the date of the hearing, the immigration judge denied the attorney's request for even a brief continuance to be allowed to supplement the record with materials she had timely prepared but was unable to

submit due to the immigration court's own refusal to timely adjudicate her motion to substitute counsel. The immigration judge denied the request for continuance and pretermitted the child's asylum application in part for her "failure" to meet the filing deadline. Further, immigration judges are across the board denying continuances for children to seek relief outside immigration court, such as Special Immigrant Juvenile Status ("SIJ"), and declining to follow Ninth Circuit case law that indicates that judges should generally continue proceedings for a child to pursue SIJ. ImmDef now has many child clients with approved or pending applications for SIJ with removal orders because the immigration judge refused to grant continuances based on their pending or approved applications for SIJ and ordered them removed.

13. Our attorneys have also witnessed this new policy impact unrepresented detained unaccompanied children. For example, a child at a Long Term Foster Care ("LTFC") placement where ImmDef was the prior legal service provider (to whom we would have offered representation had our capacity not been overwhelmed by the government policies of expedited removal for unaccompanied children) was ordered removed by an immigration judge in Texas despite the fact that the child had an approved application for SIJ, and despite the fact that an attorney requested a continuance on that basis, but it was denied. The child was ordered removed on September 28, 2026. The ORR-subcontracted LTFC facility sought the assistance of the new ORR-subcontracted legal service provider, but received no response. ImmDef could not offer representation due to our lack of capacity. We therefore coordinated with the child's prior legal service provider, who assisted with a *pro se* notice of appeal, and ImmDef paid out of pocket for a service that completes same-day filing for Board of Immigration Appeals notices of appeals on the very last day before the removal order became final. The child remains unrepresented.

14. On November 4, 2026, a different unrepresented child who had been recently transferred to Southern California from a facility in Texas was ordered removed by the immigration judge for failure to file an application for relief. The child begged the immigration judge for additional time to find an attorney and fill out applications for relief, but his request was denied. Worse,

the Spanish language interpreter scolded the child for speaking over the judge when he was desperately begging to save himself from deportation. A non-attorney ImmDef staff member observing the docket recounted that it was extremely "hard to watch." This is a child ImmDef would have stepped in to represent were it possible to accept new cases—but given how overwhelming the deadlines are in our current clients' cases, we cannot ethically do so.

15. The push to accelerate timelines and force all unaccompanied children through the immigration courts as swiftly as possible has had immediate and severe impacts on ImmDef. Our staff are suffering as they juggle multiple competing deadlines with no ability to reschedule or seek reasonable continuances—they feel they cannot even take time off to rest because a hearing could be scheduled while they are out. This anxiety has been exacerbated since mid-October, when detained children's cases began to be shuffled between different immigration judges, and advanced, often with little or no notice. Attorneys are having to check their immigration court portals every day because hearings are being advanced with only a few days' notice—and that notice is often not being forwarded to the attorney as it should be. When attorneys do receive a hearing notice, it often states a different time than what is listed in the immigration court portal, or the immigration court portal says the hearing is in person, but the hearing notice says it is virtual (or vice versa). Attorneys are having to drop everything to call immigration court clerks to determine whether they need to drive hours in traffic to attend a hearing with little notice, or log on via WebEx. Clerks often seem as confused by the situation as we are. For example, on November 4, 2026, an attorney logged into ECAS to review her caseload. She saw that that morning, one of her client's cases had been advanced over a month and scheduled before a different judge on November 9, 2026, ostensibly in person. She had not received any notice of the change. Another attorney's case was advanced from November 18 to November 10, and she also has not received an updated hearing notice to date.

16. Unfortunately, we have had three attorney resignations in the last month and a half, in part due to the stress of these expedited proceedings. When an attorney gives notice, they are

typically able to wrap up loose ends in their cases and plan their last day to occur after any urgent hearings or deadlines. In these cases, because urgent hearings and deadlines are being scheduled right up until their last day, with no allowance made for the attorney's departure, it's impossible to seamlessly transition their caseloads to new attorneys, straining our capacity even further and raising the risk that we will be unable to meet our ethical responsibilities to our clients. This is exacerbated by instances like the one noted in paragraph 12 -- in which the immigration court declines to timely rule on a motion to substitute counsel for the new attorney taking over the case and then denies any reasonable request for continuance to supplement the record. Staff are working into the night and through weekends in order to attempt to comply with court deadlines, and casework that is "less urgent" is having to be pushed to the back burner -- meaning the representation of other clients will be delayed. Attorneys providing direct representation to unaccompanied children under these accelerated timelines are suffering from managing all of these matters. ImmDef has also had to enlist the support of attorneys who usually spend most, or all, of their time working on other types of matters to now help with tasks related to unaccompanied child clients—including taking on direct representation and supporting in drafting templates and training materials. Further, supervisory staff, including myself, are spending hours drafting guidance templates and training materials for staff who have never had to litigate at the Board of Immigration Appeals ("BIA") or defend against a Motion to Pretermit. Throughout ImmDef's history, cases (including detained adult cases) have proceeded on timelines that allow attorneys sufficient time to learn, research and receive one-on-one guidance from supervisors as they navigate case types for the first time. Now, attorneys who have never litigated at the BIA are being forced to file multiple notices of appeal in a matter of weeks. There is no time for individual training or to scale learning curves.

17. The expedited timelines have caused immense strain on attorneys and clients. Detained children have not yet reached a place of safety and are struggling to adjust to a new and unfamiliar environment. They are understandably unlikely to fully trust adults who tell them

they are there to help and then ask them to tell them their worst trauma. For example, I currently represent a child who was sex trafficked by a family member in her home country. She was in ORR custody for almost two months before she finally disclosed the commercial sexual exploitation to an ORR-subcontracted case manager, and later, to me. Luckily, she entered in early 2025 when the massive expediting of detained children's cases was not yet in full effect. If she entered today, I have no doubt that that key information would have been omitted from her application because she would have been required to file it before she felt ready to disclose it. In another recent case, an unrepresented child in LTFC was mailed an asylum application and ordered to fill it out within three weeks. ImmDef did not have capacity to represent the child, and the ORR-subcontracted LTFC also was unable to connect the child with other counsel. I worked after hours sending pro se asylum application guidance materials to the ORR-subcontracted facility just to give this child a fighting chance at trying to defend herself from immediate deportation. Given the complexity of asylum law, and without an attorney to help her prepare her claim, I have little doubt that she will soon be ordered removed from the United States.

18. Once a child's asylum interview is complete, we are seeing referrals to Immigration Court within 24 to 72 hours in most cases. Many children are scheduled for initial post-referral hearings before the immigration court even before we receive the referral notice in the mail. At that hearing, immigration judges are ignoring any other applications for relief (such as an SIJS application) and scheduling the children for a final deportation hearing within 2-4 weeks.

19. Given the swift scheduling at the Asylum Office, attorneys have often not had the opportunity to fully supplement the record before USCIS, and need to file additional evidence and documents in immigration court before the final hearing, but our capacity to do so is strained. ImmDef has had to train staff who do not usually work on client cases to assist with compiling country conditions evidence just to keep pace with the swift filing deadlines. Attorneys who would otherwise file detailed briefs outlining their client's eligibility for asylum

have no time to do so. Further, child asylum applicants need significant preparation for testimony, potential cross examination, and potential questioning by the immigration judge. An asylum merits hearing is a traumatic, grueling and nerve-racking experience even for an adult. Children need hours of preparation time regarding the nature and purpose of the hearing and the importance of their testimony, as well as education about grounding and relaxation techniques that they can use during the hearing. There is no time to do any of this.

20. Unfortunately, many of our client's applications for asylum are being summarily "pretermitted" and the children ordered removed before the final hearing on their application, meaning that the record will also not be supplemented through client testimony or through an attorney's closing argument. Given that many of these children will need to appeal their deportation orders, being constrained from presenting a full and complete record before the immigration judge significantly prejudices them and will make appeals that much more challenging and labor-intensive to present.

21. EOIR's policy to expedite removal proceedings for unaccompanied children also directly interferes with ImmDef's ability to provide counsel to unaccompanied children in their removal proceedings. ImmDef has approximately 25 attorneys on our Children's Representation Project (including staff attorneys and supervisory attorneys, who ideally would carry a lower caseload in order to support their staff attorney supervisees), representing over 1300 unaccompanied child clients. Each attorney currently averages over 50 cases. Historically 50-70 cases was a manageable caseload for our children-focused attorneys given the predictable pacing of their cases. However, that is no longer the case. Attorneys are preparing for multiple merits hearings at the same time as they have master calendar hearings multiple days a week. In addition, they have asylum interviews and other matters to attend to, including deadlines to meet in state courts.

22. For example, on October 22, 2026, an ImmDef attorney appeared in court, and the immigration judge wanted to set the attorney's client's case for merits less than one week later, on October 28, 2026. The immigration judge eventually set the case for a merits hearing on

November 18, 2026 after the attorney objected. Even still, a merits date of November 18 after an October 22 hearing does not give the attorney sufficient time to prepare for the merits hearing, especially given how demanding our caseloads currently are. Also on October 22, 2026, an ImmDef attorney appeared in immigration court on behalf of a client, and the immigration judge attempted to set the merits hearing within two weeks. This ImmDef attorney asked for more time to receive records through a USCIS Freedom of Information Act ("FOIA") request and to prepare her client for a merits hearing; she further indicated that the record needed to be supplemented with new information that the child disclosed for the first time at the asylum interview. Ultimately, the immigration judge set the merits hearing for November 17, 2026, but not before noting for the record that information presented for the first time at the interview would be subjected to additional "scrutiny" for credibility, given that it had not been presented at the time of the initial filing. As explained above, the expedited timelines present here all but guarantee that new information will come out after the initial application is filed, given the time constraints attorneys face in building their client's trust and eliciting the relevant information. If information a child shares after an initial rushed filing will be discounted as not "credible," it will ruin their ability to have their claims fully considered.

23. On November 10, 2026, an immigration judge attempted to schedule a child's final deportation hearing for November 12, 2026, a mere two days later. In my career I have never heard of an immigration judge attempting to schedule a final deportation hearing in two days, because it forecloses the attorney from being able to prepare their client, and the immigration judge from being able to review filings and consider briefing. Thankfully, the attorney pushed back and was able to obtain a final hearing date of December 9, 2026. Four weeks is also an extremely brief period of time, given all of the other deadlines our attorneys are facing, but it is better than two days. Worse, this case is assigned to an attorney who is no longer on the Children's Representation Project and had been promoted into another role on another team. Under normal circumstances, we would have reassigned this client to another attorney.

However, we cannot, given that the attorneys who would typically receive such a transfer assignment are all at capacity given the expedited nature of children's deportation proceedings currently.

24. Worse, because it has been impossible to fully prepare for asylum hearings, approximately fifteen of our child clients have received removal orders in less than a month (with many more anticipated in the coming weeks), which is more removal orders on the merits than our children's attorney team has received in the over ten years of ImmDef's existence. Attorneys are now racing to meet BIA appeal deadlines on top of their typical casework (which as outlined above is also being done on an expedited basis). Given the low numbers of removal orders our team has experienced historically, litigating at the BIA is a learning curve for our team, but there is no time to scale it. Three of the removal orders were for clients whose merits hearings were scheduled and their removal orders issued during a departing attorney's notice period; one of the orders was issued on an attorney's final day, meaning that we now have to reassign that case to a new attorney to file an appeal on an extremely short deadline. This pace is not sustainable.

25. It has also had an incredibly negative impact on our unaccompanied child clients, who are being forced through their removal proceedings with no opportunity to meaningfully present their claims for relief, or to even understand what is happening to them. Children and their ORR-subcontracted case managers are reeling from the raft of removal orders and expedited hearings. One child, a girl who has experienced multiple placement disruptions while in ORR custody, including being moved once because her foster parent made sexual advances on her, has told her attorney she is doing "ok." But when the attorney reached out to the child's mother in their home country to try to obtain additional evidence for the child's upcoming merits hearing, the mother told the attorney that she was very worried about her daughter because she appears extremely stressed and anxious when they speak on the phone. The mother indicated that her child is "not the same" as she once was. Another child requested through their ORR-

subcontracted case manager to be reassigned to another attorney within ImmDef because he was so confused and upset by the removal order that he assumed his attorney had done something wrong. To the contrary, she had done everything in her power under the circumstances to defend him. But children cannot be expected to understand this or understand that the weight of the entire government appears to be focused on removing them from the country as swiftly as possible. These ruptures in trust are hard to repair and will likely impact this child going forward as we continue to litigate his appeal.

26. Another child, who speaks an indigenous language, was ordered removed on October 28, 2026, after his attorney requested additional time to prepare and file his application, as the attorney had struggled to secure interpretation. The immigration judge denied the request for a short continuance and ordered the child removed. The child's case manager reported to the attorney her concern that the child's mental health was deteriorating in the face of the confusing and expedited process, as well as the subsequent removal order. The attorney is working to continue to secure interpretation to be able to advise the child about appeal.

Dated this 12th day of November, 2026

_______________________________
Marion Donovan-Kaloust