# EXHIBIT 8

**DECLARATION OF LAUREN FISHER FLORES, ESQ., LEGAL DIRECTOR OF PROBAR IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

1. My name is Lauren Fisher Flores. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. §1746.

2. I am over the age of 18 years old and make this declaration based upon my personal knowledge and experience. If called to do so, I could and would competently testify to these matters under oath.

3. I am the Legal Director at the American Bar Association South Texas Pro Bono Asylum Representation Project (ProBAR), a legal service provider in South Texas. I have been working for ProBAR the past three years and in the immigration field since 2006. I incorporate my Declaration in Support of Plaintiffs' Motion for Temporary Restraining Order as if fully set forth herein.

**I. ProBAR Staff Have Continued to Experience Scheduling and Notice Issues Before USCIS**

4. Since filing my declaration in support of Plaintiffs' Motion for Temporary Restraining Order, ProBAR attorneys and DOJ Representatives continue to experience a high volume of asylum interviews, with as little as 24 hours' notice, denials of rescheduling requests, and failure to receive and/or accept supporting documents prior to issuing a decision. ProBAR's detained child clients now have virtual interviews with the Asylum Officer. Often, attorneys do not receive notice from the government until after the interview has already taken place. Instead, the ORR shelter caseworker is notified of the asylum interview by email and ProBAR attorneys find out about the interview from the child client or the caseworker rather than by written notice. For example, prior to the Court's TRO, I learned about a scheduled asylum interview from speaking with the child client at the shelter, and received the interview notice by mail after the date of the interview.

5. On October 13, 2026, a ProBAR attorney received notice that USCIS would be conducting a virtual interview for her client on October 15, 2026, at 7:30 AM. The ProBAR attorney emailed the Houston asylum office asking for the interview to be rescheduled, asserting the child's right to have his attorney present and providing a copy of the flight itinerary for a pre-planned family trip to Disneyland. On October 13, 2026, while the attorney was on vacation, without providing a response to the reschedule request, the asylum officer proceeded to meet with the detained child for a virtual interview. A different ProBAR attorney was able to intercede and requested that the interview be reset for the child's own attorney to be present. The asylum officer told the child that his request for the interview to be rescheduled had already been denied and that if he declined to go forward his case would be referred to the court. The child, who had suffered severe child abuse, was forced to go forward without his own attorney and without evidentiary support to his claim. Less than 24 hours later, the asylum office referred the case to the immigration court.
6. In the case referenced above, had the child client received 21 days' notice of the interview, the ProBAR attorney would have submitted police reports evidencing the persecution the child suffered, a psychological evaluation explaining the child's trauma, and country conditions explaining the circumstances in the child's country of birth. The attorney would have prepared the child for the interview over multiple sessions, explaining what the interview would be like, empowering the child to explain their story, practicing using an interpreter, and helping the child understand asylum law as it applies to them. The ProBAR attorney would have made plans to be in person with the child at the shelter in support.
7. After the Court issued its TRO, the ProBAR attorney emailed a written request to the Director of the Houston Asylum Office that the child be re-interviewed with his attorney present and provided a copy of the Court's TRO. The request was denied.

## II. Immigration Courts are Fast Tracking Removal Proceedings for ProBAR's Unaccompanied Child Clients

8. ProBAR attorneys and DOJ Representatives currently represent detained unaccompanied children in removal proceedings before EOIR. ProBAR staff regularly appear in immigration court and observe immigration proceedings. Until recently, children detained in the Rio Grande Valley region attended immigration court hearings in Harlingen, Texas in specialized juvenile dockets before two immigration judges physically located in the Harlingen, Texas court. ProBAR attorneys and DOJ Representatives, Child Advocates from the Young Center, and counsel for DHS also appeared in person. A Spanish interpreter was also usually in person in the courtroom. At the beginning of October, the hearings were all moved to virtual WebEx hearings with immigration judges in different parts of the country. Children physically detained in the Harlingen area now have hearings in other states, including Utah, Ohio, and Georgia.

9. In recent weeks, our team has witnessed a further erosion of the already-minimal due process protections for children since the policies and practices around removal hearings for detained juveniles changed in Spring of 2026. ProBAR staff have observed immigration judges state on the record that they lack control over their docket schedule. For example, I appeared for a hearing in Harlingen, Texas, with a detained unaccompanied child client who had filed an asylum application before USCIS. In the past, similarly situated clients consistently had their case dismissed under these circumstances. I requested a two-month continuance for the application to be adjudicated. The immigration judge said on the record "because Respondent is detained, I cannot give lengthy continuances, counsel, maybe two weeks at the most I might be able to stretch it to three weeks, but I can't guarantee that it won't be advanced." After that hearing, the next hearings were all conducted virtually. In two months, the child had four hearings with four different virtual judges. In one of the virtual hearings, the immigration judge was not visible on the video and instead the child could only see an

empty table and hear a disembodied voice. This child had court every week or two, often waiting hours before her virtual "turn" with judges unfamiliar with her case, each time without understanding what to expect. The frequent hearings caused the child anxiety and contributed to medical issues.

10. ProBAR staff have also witnessed these new policies negatively affect unrepresented detained unaccompanied children. Unrepresented children are being repatriated quickly, often within one month of entering the United States. Whereas children who wanted to repatriate used to seek voluntary departure with counsel and pursuant to the protections of the TVPRA, now the immigration judges are frequently ordering removal pro se. ProBAR staff have witnessed multiple children as young as thirteen ordered removed by an immigration judge without counsel. In one case, the immigration judge asked a child if there was any reason he could not return to his country. It was his second hearing before the court, and he had only been detained for one month. The thirteen-year-old pro-se child answered that he had no one to live with, and it was very dangerous to return to his country of origin. The judge told the child it was not a reason for asylum and ordered him removed. Instead of pursuing his case in a non-adversarial interview with the asylum office, the entire hearing was conducted in a few minutes in front of a packed courtroom that included media. In a different case, the immigration judge found that a pro se thirteen-year-old indigenous language speaker had abandoned her asylum application even after she expressed fear of return to her country. Despite her inability to fill out the English language form, the judge found that her asylum claim had been abandoned and ordered her removed.

11. Reports from ProBAR's Detention Orientation Resources for Youth hotline (DORY) confirm the significant impediments facing unrepresented children. Our staff have received multiple concerning calls from unrepresented detained children who have received incorrect or misleading information from the court, including prior and now

defunct versions of asylum applications and incorrect information about the way to file the asylum application fee. Legal harms are also committed by untrained ORR case managers who attempt to assist children in filing their applications – in one instance, a ProBAR accredited representative explained to an ORR case manager the harm to the child's interest in filing an unaccompanied child's asylum application with the court instead of with USCIS.

12. On Monday, November 2, 2026, after the Court issued the TRO regarding asylum office policies, ProBAR staff observed a change from two to three-week continuances to even shorter continuances. DHS counsel began objecting to continuances longer than three days for children with asylum claims and asserting "favorable country conditions" for repatriation. A pro se Spanish-speaking child was asked if he had completed the asylum application, and he responded that he had only been able to complete the first part. The judge gave him another hearing in three days. Another child had proof of the application filing with USCIS, but DHS insisted on a three-day continuance. On November 3, 2026, our staff observed a hearing with a child who was waiting for a decision after an interview with the Asylum Office. DHS counsel stated on the record that they did not see the likelihood of the application being approved and suggested the child take voluntary departure. On November 5, 2026, a pro se child showed proof of filing an asylum application with USCIS, and DHS counsel objected to a continuance of longer than three days, stating that the child had been in detention since July and DHS wanted to expedite the removal proceedings. The immigration judge scheduled the hearing for November 16, 2026, noting it was the soonest date available on his calendar.

13. The courts are not scheduling hearing dates beyond mid-November. In the hundreds of detained unaccompanied child cases ProBAR staff have observed in the month of October and the first week of November, the latest reset date we have recorded is November 17, 2026. ProBAR staff have not recorded any detained cases scheduled

beyond 2026.

14. Children arrive in the ORR detention centers with multiple layers of trauma from their experience in their home countries and on the journey. It often takes time for them to feel safe and open up to the adults around them. The expedited processes before the courts and before the asylum office limit the amount of time ProBAR staff has to develop rapport with child clients, understand their history, and develop the asylum claim. Immigration judges now expect the child to file an asylum application shortly after arriving in the United States, and USCIS schedules asylum interviews at a record pace. Meanwhile, our staff are still learning the facts of the child's claim, gathering evidence and records, and cannot sufficiently develop full and comprehensive asylum claims and applications. When the Asylum Office denies a case and refers it to EOIR, immigration judges regularly schedule the case for trial within just a few weeks.

15. Two or three weeks is not enough time to gather and translate foreign documents, find and contract with country conditions experts, procure mental health evaluations, respond to pretermission motions, brief the case, and prepare the child for an adversarial trial.

16. For example, one ProBAR client, a 15-year-old detained child, went through the asylum interview and immigration court asylum trial within a span of 23 days —an incredibly traumatizing experience for the client and nearly impossible burden on the attorney. The client filed for asylum on August 28, 2026. On September 21, 2026, ProBAR received the notice of her virtual interview on October 6, 2026. After the child's intense virtual interview, the asylum officer referred the case to the immigration court the very next day. The child was set for an initial hearing with the immigration court on October 15, 2026. At that hearing, DHS counsel moved to pretermit the asylum claim. The ProBAR attorney requested time for briefing. The immigration judge set an extremely short scheduling order for the case: the briefing deadline for pretermission on October 22, 2026, the asylum trial (should the case survive pretermission) for October 29, 2026, and

the filing deadline for all supporting documents on the asylum claim for October 28, 2026. The child's attorney successfully defended pretermission, but the immigration judge denied asylum and ordered the child removed at the hearing on October 29. The speed with which cases are proceeding is unprecedented and I have never seen anything like it in my 20 years of practice in immigration proceedings.

17. In another ProBAR case, a detained child client filed for asylum in July 2026. The interview took place on October 7, 2026 and the Asylum Office referred the case to the immigration court the very next day. The immigration judge set the asylum trial for October 28, 2026. DHS counsel moved to pretermit the asylum claim two days prior to the final hearing. At the asylum trial, the immigration judge pretermitted the asylum claim and ordered the child removed.

18. Both of those child clients had state court orders making them eligible for Special Immigrant Juvenile Status as abused, abandoned, or neglected children. Both children were ordered removed despite relief being available to them.

19. The push to accelerate case timelines and adjudications and force all unaccompanied children through the immigration courts has had immediate and severe impacts on ProBAR personnel. Our staff are working long hours to meet impossible timelines. We are unable to plan or calendar interviews and hearings due to the chaotic rescheduling and improper notice. We cannot effectively develop our clients' claims, gather evidence from foreign countries, conduct psychological evaluations, properly develop trust and use best practices for working with traumatized children, or take (or enjoy) planned time to recover. It has resulted in a demoralized environment for ProBAR's staff of passionate, mission driven advocates for children.

20. The dramatic changes to agency and court procedures that used to protect children's interests have made the legal practice nearly untenable. It directly interferes with ProBAR staff's ability to provide counsel to unaccompanied children in their removal

proceedings. ProBAR attorneys are scheduled for back-to-back master calendar and individual hearings in numerous cases now set via televideo almost every day of the week. This rapid progression of cases through the system has made it almost impossible for ProBAR to take on new clients. As a result, more children are going unrepresented in immigration court and, like those examples listed above, unable to pursue their asylum claims due to lack of language translation to understand and complete the English forms and lack of ability to articulate their asylum claims.

21. Most importantly, these changes have had an incredibly negative impact on our unaccompanied child clients. They are being forced through their removal proceedings with no opportunity to meaningfully present their claims for relief or even understand what is happening to them. For some clients, this could be the difference between life and death.

Executed on the 10th November 2026, in Houston, Texas.