# EXHIBIT 9

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| The Door, *et al.*,<br><br>*Plaintiffs,*<br><br>vs.<br><br>Joseph B. Edlow, *et al.*,<br><br>*Defendants.* | Case No. 26-cv-04326-BAH<br><br>Declaration of Elizabeth Sanchez Kennedy on Behalf of Plaintiff Galveston-Houston Immigration Representation Project in Support of Plaintiffs' Motion For Preliminary Injunction |

**DECLARATION OF ELIZABETH SANCHEZ KENNEDY ON BEHALF OF PLAINTIFF GALVESTON-HOUSTON IMMIGRATION REPRESENTATION PROJECT IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

1. I, Elizabeth Sanchez Kennedy, am the Executive Director at the Galveston-Houston Immigrant Representation Project ("GHIRP"). I certify under penalty of perjury that the following statement is true and correct.

2. I am over the age of 18 years old and make this declaration based upon my personal knowledge and experience. If called to do so, I could and would competently testify to these matters under oath.

3. I am the executive director of GHIRP and have been employed at GHIRP since its founding in 2020. I incorporate my Declaration in Support of Plaintiffs' Motion for Temporary Restraining Order (Dkt. 23-9) as if fully set forth herein.

## I. GHIRP Continues to Experience Scheduling and Notice Issues Before USCIS

4. Between filing my declaration in support of Plaintiffs' Motion for Temporary Restraining Order on October 16, 2026, and the Court's issuance of a temporary

restraining order, GHIRP observed several instances where USCIS refused to provide 21 days' notice of asylum interviews for pro se detained children in ORR custody and refused to reschedule the interviews when the ORR facilities requested that on behalf of the children. The children were told that they needed to appear for the asylum interviews or else they would risk getting "no-show" notices and being referred to immigration court.

5. On or around September 11, 2026, we were made aware of an email that ORR sent to all of its care providers, which stated that USCIS would be "requesting to conduct **virtual** interviews with the Unaccompanied Alien Children (UAC) claiming asylum" and requested that all "shelters and foster care" accommodate these requests. The email contained an attachment with further details about and instruction on how ORR will "support[] virtual asylum interviews." The email and attachment are attached as Exhibit A to this declaration. We received a copy of this email from a staff member at an ORR facility. GHIRP was actually aware of this change before September 11, 2026, but that appears to have been the formal announcement. As mentioned in our prior declaration, we represent two detained child clients for whom USCIS attempted to schedule asylum interviews on September 3, 2026, with less than 24 hours' notice.

6. In addition, we have observed that the Houston Asylum Office on multiple occasions has failed to accommodate the needs of children in ORR custody experiencing mental health crises due to prolonged detention and family separation. Some children have been involuntarily hospitalized during their detention in ORR custody. On one occasion, a child had to complete his asylum interview virtually from within a psychiatric hospital. The Houston Asylum Office was made aware of the child's hospitalization multiple times, but a supervisor ultimately instructed the interviewing officer to conduct the interview regardless. A GHIRP attorney requested that the ORR facility make the child available for a phone call before proceeding with the interview, but the attorney received

no response to the request. That child's asylum application was referred to immigration court immediately after the conclusion of his asylum interview, and the immigration judge scheduled him for an individual hearing at the very next court setting after he was released from the hospital.

7. On another occasion, a child was asked to sign paperwork for the Houston Asylum Office while still in the hospital. On both occasions, a GHIRP attorney objected to the unreasonable requests being made by USCIS, and the ORR facility's accommodations of those requests. The repeated hospitalizations have severely impacted GHIRP's ability to provide legal services to the detained children, and USCIS has consistently overlooked the obvious competency concerns for these children.

8. We have also observed multiple instances where the Houston Asylum Office issued a Referral Decision with a Notice to Appear before the immigration court; however, our clients did not receive either the decision or NTA in the mail. In almost all cases of our referred clients, the Houston Asylum Office is failing to send the notices to our clients, therefore not properly serving paperwork on the applicants. It appears as though USCIS is not sending the paperwork to the children at all, resulting in our clients appearing in immigration court despite never being served a charging document. In the cases where we represent the clients, we receive the attorney copy; however, in the cases where the applicants are unrepresented before USCIS, it is unclear if they are even being served the documentation properly in accordance with law.

9. From November 9-10, 2026, GHIRP received 68 interview notices from the Houston Asylum Office for our clients. The interviews are scheduled to occur on the same three days: December 8 (25 interviews), December 9 (28 interviews), and December 10 (15 interviews). An additional 11 clients have been scheduled for interviews, according to the USCIS online case status page, but we have not received the interview notices yet. The notices technically provide our office at least 21 days' notice, but that time does not

ensure GHIRP can meaningfully represent our clients in nearly 80 back-to-back interviews occurring in less than one week. Our team consists of only 7 attorneys and one DOJ accredited representative, and we cannot prepare for, and appear in, 79 separate interviews with clients occurring within three days. This is particularly true when the immigration court is simultaneously expediting a large number of clients through the court system.

10. On November 9, 2026, we submitted reschedule requests to the Houston Asylum Office for two detained child clients with upcoming asylum interviews, citing the TRO. As of November 11, 2026, they have yet to respond to these requests. Our attorney received an automatic response from the Houston Asylum Office email address, so we know that the two requests were received; however, they have not responded even to acknowledge receipt, as we requested.

11. We intend to submit requests to reschedule many of the other interviews so that we can prepare the clients, submit supporting documentation, and competently represent them during the interview.

## II. Immigration Courts are Fast Tracking Removal Proceedings for GHIRP's Unaccompanied Child Clients

12. GHIRP is currently representing approximately 30 detained unaccompanied child who are in removal proceedings before EOIR. We also have 11 unaccompanied child clients who are released and have completed their asylum interview with USCIS and now awaiting a decision.

13. GHIRP has observed immigration judges indicate on the record that they lack control over their docket schedule. When we have requested continuances to allow the children more time to prepare applications, evidence, or testimony, we have been told by multiple immigration judges that they only have certain dates available and that they are limited in how long of a continuance they can grant. When we have requested continuances,

administrative closure, or termination of removal proceedings to allow children to proceed on applications for collateral relief with U.S. Citizenship and Immigration Services (USCIS), such as Special Immigrant Juvenile status ("SIJS"), they have been denied every time. The immigration judge orders denying continuances in these situations have merely cited a lack of good cause or speculative relief.

14. Our detained clients have been required to file Form I-589s with the immigration courts on very fast timelines. Typically, within days of USCIS referring an asylum application to EOIR, the child has to appear in immigration court, where the judge sets the case for an individual hearing within the next two or three weeks. In a couple of cases the immigration judge has granted a short continuance to find an attorney or prepare for the case, which gave the children only two to three additional weeks. This means that the best-case scenario for detained unaccompanied children is a six week period to prepare for their individual hearing.

15. In one a hearing in October, where a GHIRP attorney requested a continuance for our client, the immigration judge appeared to be willing to grant additional time. However, he reversed course after reviewing his computer screen and denied the continuance. Our attorney continued advocating for him to grant the continuance and the judge confirmed on the record that he had no other available dates and believed he needed to complete the case by a certain period of time.

16. Another case example illustrates EOIR's accelerated processing of detained UC cases. DHS initiated removal proceedings against a 17-year-old detained child shortly before the Acacia contract expired at the end of July 2026, and thus shortly before USCIS and EOIR further expedited their processing of unaccompanied children's cases starting in August 2026. At this child's first hearing to occur after the change in contract, in mid-August, the immigration judge granted a single 17-day continuance for the child to find counsel. At the next hearing, in late August, the judge forced the child to enter

pleadings and further ordered him to file a Form I-589 with USCIS. In mid-September, the child filed his Form I-589, pro se but with GHIRP's help, and he updated the court accordingly at the next hearing later in September. Over the next thirty-two days, USCIS interviewed the child (with inadequate notice prior to the interview and after refusing his reschedule request), referred his asylum application to EOIR, and then EOIR held an individual hearing where the judge ordered the child removed. The child had asked the judge for more time, but the judge denied his request.

17. We have also seen immigration judges require unrepresented children to respond to the allegations in the Notice to Appear—i.e., the charging document in their case—without counsel, despite their obvious lack of comprehension. In several instances, children accepted deportation or voluntary departure and waived their right to seek asylum or other protection without understanding their case. Others were ordered removed simply because they could not prepare an application on their own within the time the judge allowed.

18. On one recent docket, a very brave detained child told the immigration judge after pleadings that his Form I-213, which had been prepared and filed by DHS, was not accurate because it indicated that DHS had detained him without incident, but in reality, DHS had assaulted him and broken his leg. The Form I-213 is a DHS-prepared document that the government often uses in removal proceedings to establish the charges of removability alleged in the NTA. If the child was correct and the Form I-213 was inaccurate, the immigration judge could suppress the document and not consider it as evidence. Since the I-213 forms the basis for the removal proceedings, the child would potentially be eligible for termination of proceedings if the document was not admitted into evidence. At the very least, the government would be required to correct the documentation.

19. However, the judge proceeded with the case despite the child's assertion of being

assaulted by a government official. This is in stark contrast to prior child-friendly practices, when the juvenile judges would have developed the record of unrepresented children who raise serious issues of child harm, and seems to be the result of inflexible time limits for adjudicating children's cases.

20. Additionally, the courts are shuffling, reassigning, and consolidating children's cases with different judges, removing the children from juvenile judges and exacerbating the issues related to expeditious adjudications in the immigration court. Several child-friendly immigration judges who previously presided over detained unaccompanied children cases have seen their dockets transferred to other judges. Several of our former juvenile docket judges required in-person attendance at the courtroom, but the new judges strictly appear virtually, by WebEx. They have instructed us to file documents virtually, even for pro se respondents, and we have had multiple court clerks reject our filings that we have tried to file in person. The constant moving of dockets and judges has created confusion for attorneys attempting to file documents and meet court deadlines. While our detained juvenile clients have remained on dockets heard by Houston immigration judges, we have observed that children from out-of-state facilities are now also being heard by the same judge. Our access to observe the virtual dockets for children we are not assisting as Friend of Court has also been limited recently.

21. On another docket, a tender age child alerted the immigration judge that she had never received the Form I-213 in her case (which a GHIRP attorney appearing as Friend of Court affirmed), but the judge forced the child to plead nonetheless, telling her he had to move the case forward that day. She requested voluntary departure, but informed the judge that her younger siblings, whose cases were consolidated with their older sister's case, explicitly did not want voluntary departure. Nonetheless, the judge ordered all three children to take voluntary departure—even after the child indicated that she did not have a parent in her home country to receive her or her siblings, since her mother was in jail

and she did not know her father. The child's statements on the record raised child protection issues and alarming flags as to the viability of safe repatriation to their country of origin, which is part of the federal government's obligations to unaccompanied children. *See* 8 U.S.C. § 1232(a)(5)(A). Furthermore, the child's assertions indicate that the siblings qualify for Special Immigrant Juvenile Status, relief that would protect them from deportation and future harm. Previously, in a situation where child safety is at issue, an immigration judge would further develop the record, especially in the case of very young, unrepresented children.

22. A GHIRP attorney appearing as Friend of Court requested to enter an appearance for the younger siblings to sever the cases from the older sibling. However, the judge denied the request and abruptly removed the GHIRP attorney from the WebEx hearing, telling her she was impermissibly advocating for the children. The child and her little sister both cried into each other's arms after the hearing, as a GHIRP legal assistant attempted to explain what had happened and console them. All of these children have pending applications for relief with USCIS that could provide them a pathway to permanent legal status, but the immigration judge disregarded the pending applications.

23. We also recently observed an immigration judge "interrogating" detained child respondents (in the judge's own words) to assess their Spanish language proficiency, after they had requested an interpreter in their native (non-Spanish) language that the court did not provide. Language access issues seem to be more common due to the fast-tracking and re-calendaring of cases for unaccompanied children in both detained and released settings.

24. This push to accelerate the timelines and force all unaccompanied children through the immigration courts has had immediate and severe impacts on GHIRP and the children we serve. Our staff are experiencing burnout and vicarious trauma more than ever, and they are having to work overtime to meet these deadlines. We have been unable to obtain

evidence or prepare legal briefing to the quality and extent we would have previously due to woefully inadequate time to prepare cases and for such a high volume of cases.

25. By requiring newly arriving or newly detained children to file applications for relief immediately, it is extremely difficult for our team to provide legal services to children to protect their due process rights and ensure they have access to safety. GHIRP's Immigrant Children and Youth attorneys need time to adequately prepare our clients' cases, which could include finalizing client and witness declarations, gathering additional corroborating evidence establishing their claim, finalizing expert reports and declarations, and identifying and preparing witnesses for trial. These continuances are critical to providing effective representation to our unaccompanied child clients, and thus fulfilling GHIRP's mission, because our legal staff are able to prepare our clients' cases in a child-friendly and trauma-informed manner and file comprehensive application to the court.

26. Similarly, by fast-tracking children through the asylum office then through the immigration court process, GHIRP's legal team does not have the opportunity to present a fully prepared claim for our young clients in their EOIR proceedings. Because of this high-volume, fast-tracked system, our attorneys are often reduced to standing beside our clients instead of providing the full representation they need to participate meaningfully in their removal proceedings.

27. Expedited processes have also had an incredibly negative impact on our unaccompanied child clients, who are being forced through their removal proceedings with no opportunity to meaningfully present their claims for relief, or to even understand what is happening to them. In addition to the courtroom observations mentioned above, we have seen that detained children are being hospitalized for mental health crises amid prolonged detention. They are desperate and stressed over the changing enforcement policies that leave them detained without familial or legal support. Detained children are overcome

with fear because they have no advocate to raise their claims in court. They are scared that they are now required to defend themselves against deportation, and if unsuccessful, they will be forced to return to no one, or to a violent or neglectful home.

28. Even under the best circumstances, with an attorney who has time to fully prepare an asylum claim, current law and precedent make it extremely difficult to establish eligibility for protection in immigration court. Now, hundreds of children are being fast-tracked through the court on a fixed deadline while detention facilities have no legal services. Under these conditions, it is nearly impossible for them to meaningfully participate in their cases, much less prove they qualify for relief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 11th day of November 2026, in Harris County, Texas.

____________________________________

**Elizabeth Sanchez Kennedy**
**Executive Director**
**Galveston-Houston Immigrant Representation Project (GHIRP)**

# EXHIBIT A

[redacted]

From: UC Policy (ACF) <UACPolicy@acf.hhs.gov>
Sent: Friday, September 11, 2026 1:19 PM
Cc: UC Policy (ACF) <UACPolicy@acf.hhs.gov>
Subject: Preparing for USCIS virtual interviews with UAC claiming asylum

Dear UAC Provider Network,

In the coming weeks, the United States Citizenship and Immigration Services (USCIS) will be requesting to conduct **virtual** interviews with the Unaccompanied Alien Children (UAC) claiming asylum. Prior to the virtual interview, care providers must have the following ready for UAC who are participating:

- Designate a private enclosed area that allows for confidentiality for in-person and virtual meetings to accommodate attorney of record and/or Legal Service Provider (LSP) attendance;
- Inform attorney of record and/or LSP of the virtual interview when the interview time is set;
- Prepare video/audio equipment and technology suitable for use in virtual interviews; and
- Provide qualified interpretation and/or translation services upon request.

USCIS anticipates all care providers will accommodate the virtual interviews, including shelters and foster care.

Please refer to the Job Aid attached, which will also be issued in the Knowledge Library.

For questions on procedures surrounding preparation for the virtual interviews that are not addressed in UAC policies and procedures, please reach out to UACLegalServicesSupport@acf.hhs.gov.

Thank you for everything you do to ensure the safety of the children ORR serves.

UAC Bureau
Office of Refugee Resettlement
Administration for Children and Families
U.S. Department of Health and Human Services
Washington, DC 20201