**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Office of the Director*
Camp Springs, MD 20588-0009

U.S. Citizenship and Immigration Services

November 24, 2026

# Memorandum

TO: Ted Kim
Associate Director
Refugee, Asylum and International Operations Directorate

FROM: Joseph P. Edlow
Director

JOSEPH B EDLOW Digitally signed by JOSEPH B EDLOW
Date: 2026.11.24 11:56:18 -05'00'

SUBJECT: **Scheduling Asylum Interviews for Unaccompanied Alien Children in Office of Refugee Resettlement Custody and Failure to Appear Procedures**

**Purpose**

This memorandum supersedes both the provisions of the September 27, 2026 decision memorandum entitled "Expedited Scheduling and Adjudication of Asylum Applications Filed by Unaccompanied Alien Children in Office of Refugee Resettlement Custody," regarding the scheduling of interviews of unaccompanied alien children (UACs) in the custody of the Office of Refugee Resettlement (ORR), and for all UACs, the determination that all scheduled asylum interviews should only be rescheduled upon a showing of "exceptional circumstances," rather than the prior more permissive process which permitted automatic rescheduling upon request, and later requests upon a showing of "good cause." This memorandum provides a comprehensive background regarding the problems and challenges USCIS faces in scheduling and rescheduling interviews, including the unique welfare concerns presented by UACs, as well as updated procedures to address those issues.

**Background**

*Asylum Interview Scheduling*

Section 208(a)(1) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1158(a)(1), provides that any alien physically present in the United States may apply for asylum, either through a credible fear screening where DHS initiates expedited removal or by filing an application for asylum for consideration under the procedures of INA § 208, 8 U.S.C. § 1158. Affirmative asylum applicants have no statutory right to an interview. INA § 208, 8 U.S.C. § 1158; *see also Affirmative Asylum Referrals Without Interview*, 91 Fed. Reg. 47101 (July 28, 2026) (interim final rule). Further, there is no statutory minimum notice period that must be provided to an affirmative asylum applicant in advance of a scheduled interview with USCIS. Rather, Congress emphasized its expectation that asylum proceedings immediately move forward, either in the

form of an interview before USCIS or a hearing before an immigration judge, *at most* 45 days after the alien files an application. *See* INA § 208(d)(5)(A)(ii), 8 U.S.C. § 1158(d)(5)(A)(ii). Pursuant to INA § 208(d), 8 U.S.C. § 1158(d), DHS maintains regulations governing its consideration of asylum applications at 8 CFR § 208, et seq. Those regulations, detailed as they are, do not provide any rule about how much notice must be given to UAC asylum applicants if USCIS opts to interview them following initial review of the application submission.

In practice, the USCIS Asylum Division has often scheduled asylum interviews with 21 days' notice to the alien. Specifically, the USCIS Asylum Division's Affirmative Asylum Procedures Manual (AAPM) provides that USCIS generates interview notices within 21 or 22 days for batch scheduled cases and interview notices should be mailed "no fewer than 18 days before the scheduled interview date." At the same time, the AAPM acknowledges that asylum office directors maintain discretion to schedule interviews with less than the default 21 days' notice for cases involving special circumstances, provided the alien receives adequate notice of the interview. After a comprehensive review of the special circumstances presented by UACs in ORR custody, USCIS determined that such cases should generally be scheduled on a more expeditious basis whenever possible, as laid out in the discussion below.

*Failure to Appear Procedures*
Pursuant to section 208(d)(5)(A)(v) of the INA, 8 U.S.C. § 1158(d)(5)(A)(v), an alien's asylum application may be dismissed, or an alien may be otherwise sanctioned for failure to attend an asylum interview absent exceptional circumstances or prior authorization. Implementing regulations at 8 CFR § 208.10 provide that USCIS will excuse (i.e., provide "authorization" for) an alien's failure to appear at a scheduled asylum interview if such failure was the result of exceptional circumstances. As such, the regulation creates a single, clear standard, which is that any failure to appear at an asylum interview (or request to not appear at such interview) will be "without prior authorization" under INA § 208(d)(5)(A)(v), 8 U.S.C. § 1158(d)(5)(A)(v), unless the alien demonstrates exceptional circumstances.

In practice, prior to August 21, 2026, USCIS permitted failures to appear for an asylum interview in a manner inconsistent with the asylum statute or regulations, which is one of the many critical reasons for the crisis-level backlog in the asylum system today. Prior to August 21, 2026, USCIS allowed aliens to reschedule an asylum interview once without any justification whatsoever upon a request made before the asylum interview. USCIS also permitted unlimited reschedules after that for "good cause" if the alien contacted USCIS within 45 days of the failure to appear, or for exceptional circumstances even if the alien contacted USCIS more than 45 days after the scheduled interview date, unnecessarily drawing out the process and draining USCIS resources. USCIS applied these failure to appear procedures generally to both UAC and non-UAC cases. On August 21, 2026, USCIS issued updated procedures related to an alien's failure to appear for an interview applicable to all asylum cases before USCIS. These updated procedures more closely aligned USCIS's procedures with governing regulations, particularly as USCIS strives to reduce its unprecedented affirmative asylum backlog, efficiently schedule and resolve cases, and preserve valuable resources and finite interview slots. Under the updated procedures, when an alien fails to appear for a scheduled asylum interview, the alien must demonstrate exceptional circumstances for the failure to appear within 10 days of the missed

interview in order to excuse the failure to appear. If that does not happen, the alien generally has an opportunity to continue pursuing his or her asylum application in removal proceedings before an immigration judge even if proceedings are not immediately initiated by virtue of USCIS referring the application.

**Discussion**

*Special Considerations for Scheduling and Rescheduling UAC Interviews*

After careful consideration of the special circumstances of UACs in ORR custody, I have concluded that those circumstances warrant the scheduling of such asylum interviews on an expedited basis. Counsel and representatives should ordinarily complete the principal development of a UAC's asylum claim before filing Form I-589, including establishing an attorney-client relationship, developing rapport, gathering information and available corroboration, identifying legal theories, considering necessary professional evaluations, and preparing the application. Filing initiates adjudication; it is not the beginning of all case preparation, and interview scheduling should not be counsel's first opportunity to prepare the child for the asylum process. Prompt scheduling of the interview will not deprive counsel of the opportunity to establish a relationship with their client, prepare the case sufficiently for filing, and prepare a UAC client for the likelihood of a prompt interview.

Historical practice confirms that child-sensitive adjudication and prompt processing are not inconsistent objectives. For example, the 1998 INS *Guidelines for Children's Asylum Claims* identified the unique issues that children present in the context of the asylum process, noting they may need child-sensitive questioning and a child-friendly interview environment and directing asylum officers to use age-appropriate procedures; however, it also notes that, at that time, "[v]irtually all applicants who filed their asylum applications after January 4, 1995, [had] their cases decided within 60 days." *INS, Guidelines for Children's Asylum Claims* at 5–9 (Dec. 10, 1998).

USCIS's historical UAC guidance likewise recognizes the importance of moving UAC asylum claims forward without unnecessary delay. The 2009 memorandum from then Asylum Division Chief Joseph Langlois directs that, "[i]nterview scheduling should be done as expeditiously as possible for UACs, particularly for those who are in ORR custody at the time of filing," and that asylum offices should attempt to schedule the interview before the child's next immigration-court hearing. *USCIS, Implementation of Statutory Change Providing USCIS with Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children* at 5 (Mar. 25, 2009). The memorandum also directs manual scheduling and special arrangements for UACs in ORR custody. *Id.* at 3–6. Prompt scheduling is not a recent departure from child-sensitive practice; it is an established feature of USCIS's approach to UAC cases.

As discussed below, significant new issues have arisen since 1998 and 2009 that complicate the timely adjudication of asylum applications, including the development of an extraordinary backlog. When considering the special needs of the UAC population, the factor that USCIS can most effectively address immediately is scheduling. Prompt adjudication reduces uncertainty, facilitates a protection decision, and allows related proceedings to either advance or moot out. USCIS can preserve the opportunity for case-specific accommodation where warranted,

including consideration of counsel availability, while at the same time reestablishing the importance of ensuring that UAC asylum cases are considered and efficiently resolved.

The following factors inform my conclusion that USCIS must prioritize prompt scheduling of UAC asylum interviews:

- Backlog: Between Fiscal Year (FY) 2021 and FY 2024, the United States experienced a substantial surge of aliens at the Southwest border, including at least 475,000 UACs without adult guardians.[1] In many instances, cartels and others trafficked UACs to exploit vulnerabilities in the immigration system.[2] This influx of aliens crossing the Southwest border resulted in a massive increase in asylum claims, including from UACs. Many of these UACs are in ORR custody awaiting resolution of their cases and outdated USCIS scheduling policies, including routinely allowing for multiple reschedules and postponements, have created an open-ended source of delay for these cases, prolonging any reduction of the backlog of such cases and wasting valuable USCIS interviewing and adjudicative resources.
- Detention: As recognized in 8 CFR § 208.5(a), where possible, the Department of Homeland Security (DHS) shall give expedited consideration to the applications of detained aliens. USCIS recognizes that, given their age and circumstances, UACs are particularly vulnerable and may have experienced trauma at an early age, including from abuse, neglect, trafficking, or other mistreatment. USCIS addresses this reality in part by ensuring asylum officers are specifically trained on children's claims, eliciting testimony, conducting non-adversarial interviews, detecting possible victims of trafficking, and interviewing survivors of torture and other severe trauma. Additionally, USCIS seeks to ensure that its role in the processing of UAC asylum applications does not result in delays that cause UACs, especially those who are childhood survivors of trauma, to remain in ORR custody any longer than necessary.
- Overlapping Jurisdiction: USCIS must mitigate unnecessary procedural delays in processing the cases of UACs in ORR custody where UACs are in removal proceedings before the Executive Office for Immigration Review (EOIR). USCIS has initial jurisdiction over asylum applications filed by UACs, even where they are simultaneously in removal proceedings, pursuant to INA § 208(b)(3)(C), 8 U.S.C. § 1158(b)(3)(C). Due to short-sighted litigation, such as *J.O.P. v. DHS* (No. 8:19-cv-01944-SAG D. Md.), USCIS must exercise jurisdiction over

[1] See Department of Justice, *DOJ, DHS, HHS Hold Press Conference on Efforts to Safeguard Unaccompanied Alien Children*, Press Conference Video (June 11, 2026), at :37-12:00 (Video); Office of Refugee Resettlement, Administration for Children and Families, *Summary Report on Fraud Perpetrated by Potential and Actual Sponsors in the Unaccompanied Alien Children Program*, Oct. 6, 2026, https://acf.gov/system/files/filefield_paths/CLEAN---ORR-MEMO_Final_.2-PDF.pdf.
[2] See Video at :37-3:00; DHS, *Secretary Noem & President Trump Take Sledgehammer to Human Trafficking Networks Thanks to Robust Defense of the Homeland, Crackdown on Cartels*, Jan. 22, 2026, https://www.dhs.gov/news/2026/01/22/secretary-noem-president-trump-take-sledgehammer-human-trafficking-networks-thanks.

applications filed while the alien was designated a UAC, even if the alien has long passed the age of 18, including many situations in which the former UAC ends up in adult detention, which creates further barriers to adjudication. Thus, USCIS must exercise its initial jurisdiction expeditiously to avoid multiple continuances of removal proceedings before EOIR, which wastes government resources and contributes to the immigration court backlog.

- Indeterminate Status: UACs in ORR custody are often in a state of procedural limbo while their asylum application is pending with USCIS. USCIS seeks to efficiently complete its role in the process to bring the UAC closer to a definitive status as quickly as possible. USCIS may grant asylum, resolving the alien's status to that of an asylee and eliminating the need for continued removal proceedings. If USCIS does not grant asylum, the asylum application continues to be processed before EOIR, where the immigration judge will evaluate the UAC's asylum claim de novo, and where the UAC may also pursue alternate forms of relief. In all such cases, USCIS must take adjudicative action regarding the asylum application over which it has initial jurisdiction to make apparent the appropriate next steps in proceedings before EOIR and so the UAC and his or her legal representative, where applicable, may evaluate next steps and prepare accordingly.
- Eligibility Considerations: The asylum claims of UACs may become weaker as time goes on, particularly where they are based on past persecution and DHS may rebut the presumption of a well-founded fear of future persecution based on a fundamental change in circumstances or the possibility of internal relocation. USCIS seeks to ensure prompt scheduling and resolution of such cases so that any weakening of a potential asylum claim that accrues with the passage of time is not a result of inefficiency on the part of USCIS.
- TVPRA: 8 U.S.C. § 1232(d)(8) provides that the specialized needs of UACs must be taken into account in processing their asylum applications. In addition to the considerations outlined above, USCIS takes substantive aspects of UAC claims into account by, for instance, excusing the one-year filing deadline. *See* 8 U.S.C. § 1158(a)(2)(E); 8 CFR § 208.4(a)(5)(ii). USCIS also takes procedural aspects into consideration by ensuring the UAC has an interpreter if needed, permitting a trusted adult to attend the interview, and continually updating its mandatory training modules on children's claims, interviewing techniques, and trafficking issues. Further, rescheduling requests based on USCIS scheduling the same attorney of record for multiple UAC asylum interviews at the same time must be considered exceptional circumstances and granted. Although USCIS evaluates requests to reschedule interviews at a uniform exceptional circumstances standard, USCIS takes the specialized circumstances of UACs in ORR custody into consideration when evaluating whether circumstances beyond the UACs' control resulted in their inability to appear for the interview as scheduled, which drives the individualized exceptional circumstances determination.[3] None of these

[3] *See* INA § 240(e)(1); 8 U.S.C. § 1229a(e)(1) (defining exceptional circumstances as compelling circumstances beyond the control of the alien.

measures taken to account for the specialized needs of UACs are hampered by expedited scheduling of the asylum interview.

Based on the above considerations, asylum office directors will aim to schedule interviews for UACs in ORR custody within a target timeframe of 24 hours to seven days after providing notice to the UAC and his or her legal representative, where applicable. USCIS will continue to provide each UAC with notice of the interview requirements and will notify legal representatives when the UAC is represented. Considering the UAC is in ORR custody and should be prepared to discuss the asylum application that he or she already filed, 24 hours to seven days' notice for an interview is reasonable, where the circumstances include participating in a non-adversarial interview with an asylum officer specially trained on non-adversarial interview techniques, children's claims, and eliciting testimony, and where USCIS may provide an interpreter in the event the UAC does not have one.

Additionally, if any UAC does not appear for an asylum interview with USCIS, either virtually or in person, the asylum office will process the UAC's case according to current failure to appear procedures, noting that USCIS scheduling the same attorney of record for multiple UAC interviews on the same date and time constitutes exceptional circumstances to excuse and reschedule conflicting interviews (i.e., to facilitate proceeding with one scheduled UAC interview on the scheduled date and time, the attorney may request rescheduling of other interviews also scheduled at the same date and time).

Given USCIS's overarching interest in processing UAC cases (including those in ORR custody) efficiently, avoiding multiple continuances and procedural delays where UACs are also in removal proceedings before EOIR, and ensuring UACs do not remain in ORR custody for prolonged periods of time where applicable, I have concluded that USCIS's interest in standardizing the exercise of discretion to schedule UAC interviews as timely as possible to outweigh any potential reliance interests on behalf of UACs and their representatives. Further, any such reliance interest was mitigated by USCIS's publication of a web alert describing the updated procedures in early August of 2026.

I considered relevant legal authority to determine whether the notice practices articulated in this memo are adequate. The minimum notice period for an asylum interview with USCIS is necessarily less than the 10 days' notice required for a hearing before an immigration judge. *See Matter of A-K-R-*, 29 I. & N. Dec. 839, 840 (BIA 2026). Unlike a removal hearing initiated by the government, the asylum interview is scheduled in response to the alien's filing of a Form I-589, Application for Asylum and for Withholding of Removal, and request that USCIS process it. There are also elevated due process considerations at stake in adversarial removal proceedings that could result in immediate removal that do not exist before USCIS in its scheduling of a non-adversarial interview with an asylum officer specifically trained in handling children's claims and eliciting testimony, as described above.

Relevant regulatory and statutory authority also support USCIS scheduling UACs in ORR custody on a more expeditious basis than the historically common 21 days' notice. By regulation, an alien should be able to discuss his or her asylum application with USCIS personnel

as soon as it is filed. *See* 8 CFR § 103.2(b)(1) (any benefit requestor must establish eligibility at the time of filing); *see also* 8 CFR § 208.3(a) and (c) (requiring that an asylum application be filed "with any additional supporting evidence" at the time of filing). In the event that the alien obtains additional supporting evidence after the time of filing, USCIS policy provides, in accordance with 8 CFR § 208.9(e)(1), that the alien can present specific evidence during the course of an asylum interview or in response to a request for corroborating evidence. Asylum officers maintain discretion to accept evidence submitted less than 14 days prior to the interview date or to grant the alien a brief extension of time during which the alien may submit additional evidence under 8 CFR § 208.9(e)(1).[4] Moreover, as recognized by statute, an alien can meet his or her burden of proof to establish eligibility for asylum through credible testimony alone or through a post-interview corroborating evidence submission where the adjudicator deems it appropriate. INA § 208(b)(1)(B)(ii), 8 U.S.C. § 1158(b)(1)(B)(ii).

Consistent with current practice, a UAC in ORR custody may voluntarily request an expedited interview by executing a waiver.[5] USCIS, however, does not require aliens to execute a waiver before an asylum office director can exercise discretion to schedule an interview with less than the default notice that is programmed into the USCIS batch scheduling system. Therefore, USCIS typically will not obtain a waiver from UACs in ORR custody before USCIS initiates the expedited scheduling of these cases within 24 hours to seven days from the time of notice.

*UAC Failure to Appear Procedures*

I do not consider it necessary, prudent, or in the public interest for USCIS to create separate procedures for UACs who fail to appear for an asylum interview, whether or not such interview was scheduled with fewer than 21 days' notice. One reason for this superseding memorandum, however, is to clarify that exceptional circumstances include situations in which USCIS schedules the attorney of record for multiple UAC interview at the same time, rendering the attorney unable to attend one or more of the interviews. USCIS instituted its current failure to appear for asylum interview procedures, consistent with applicable statutory and regulatory guidelines, as part of an overall effort to reduce the current affirmative asylum backlog, including by efficiently scheduling and processing cases and preserving valuable resources and interview slots. The procedures governing failure to appear for an asylum interview in place as of August 21, 2026, adequately and fairly address any legitimate need of aliens, including UACs, to reschedule asylum interviews, consistent with the exceptional circumstances standard outlined in both statute and regulation. *See* INA § 208(d)(5)(A)(v), 8 U.S.C. § 1158(d)(5)(A)(v); 8 CFR § 208.10.

---

[4] 8 CFR § 208.9(e) was promulgated to ensure that asylum officers had sufficient time to review evidence and clarify an alien's request to submit additional evidence would be considered an applicant-caused delay. *See Asylum Application, Interview, and Employment Authorization for Applicants*, 85 Fed. Reg. 38532, 38535 (June 26, 2020) (final rule). Nothing about it was intended to create a right to an asylum interview or mandate a particular notice period for an asylum interview.

[5] AAPM Appendix 124, Waiver of 21-Day Notice for Asylum Interview (UACs in Custody), documents alien-initiated requests to schedule an asylum interview with fewer than 21 days' notice.

It is not possible to permit the rescheduling of UAC interviews absent exceptional circumstances (which may include exceptional circumstances experienced by either the alien or the alien's legal representative) and still expeditiously resolve such cases as required given the considerations described above. Were USCIS to permit the rescheduling of such interviews at a lower standard than the current generally applicable exceptional circumstances standard when an alien fails to appear, it would undermine the goals outlined above related to efficiently processing UAC cases and likely render the efforts to expeditiously process such cases futile, as interview scheduling could be subject to multiple reschedules, interview slots would be wasted, EOIR hearings would be continued, and the considerations outlined above would be largely ignored. At the same time, the specialized circumstances of UACs can be taken into account when evaluating whether a UAC applicant's failure to appear for an interview was the result of exceptional circumstances. Exceptional circumstances include circumstances beyond an alien's control that prevent him or her from attending an asylum interview. For instance, for a UAC in ORR custody, there may be circumstances outside of the UAC's control, such as an issue at the facility where the UAC is housed, that could prevent him or her from attending an asylum interview and qualify as exceptional circumstances. Additionally, if a UAC's legal representative is unable to attend the UAC's asylum interview due to an exceptional circumstance beyond his or her control and contacts USCIS within 10 days of the failure to appear, the UAC's failure to appear will be excused and the interview will be rescheduled. I have concluded that the exceptional circumstances standard may be applied to the particularized circumstances of UACs without any need to change the overall standard at which USCIS evaluates an alien's failure to appear for an interview. As such, in line with the overarching interests in expeditiously processing UAC cases, including those in ORR custody, USCIS must maintain the generally applicable failure to appear for asylum interview procedures in place as of August 21, 2026.

**Conclusion**

For the reasons discussed in this memorandum, USCIS will expeditiously schedule asylum interviews for UACs in ORR custody within 24 hours to seven days from the time of notice, whenever possible, and will apply the current generally applicable failure to appear for an asylum interview procedures in place as of August 21, 2026, to all UAC cases, consistent with this memorandum.