**U.S. Department of Justice**

Executive Office for Immigration Review

*Office of the Chief Immigration Judge*

Chief Immigration Judge

*5107 Leesburg Pike, Suite 2500*
*Falls Church, Virginia 22041*

December 20, 2017

**MEMORANDUM**

TO: All Immigration Judges
All Court Administrators
All Attorney Advisors and Judicial Law Clerks
All Immigration Court Staff

FROM: MaryBeth Keller MTK
Chief Immigration Judge

SUBJECT: Operating Policies and Procedures Memorandum 17-03:
*Guidelines for Immigration Court Cases Involving Juveniles, Including Unaccompanied Alien Children*

This Operating Policies and Procedures Memorandum (OPPM) rescinds and replaces OPPM 07-01, *Guidelines for Immigration Court Cases Involving Unaccompanied Alien Children*, dated May 22, 2007.

Table of Contents

I. Introduction ....... 2

II. Definitions ....... 2

III. Basic principles ....... 3
- A. Individual circumstances ....... 3
- B. Best interest of the child ....... 3
- C. Legal and personal representation ....... 3
- D. Judicial impartiality ....... 3
- E. Applicability to all Immigration Judges ....... 4
- F. Child abuse and human trafficking protocols ....... 4

IV. Courtroom setting and procedures ....... 4
- A. Courtroom orientation ....... 4

B. Scheduling juvenile cases ....5
C. Courtrooms ....5
D. Waiver of a juvenile's appearance ....5
E. Removing the robe. ....5
F. Control access to the courtroom. ....5
G. Explain the proceedings at the outset. ....6
H. Pay attention to the interpreter. ....6
I. Be aware of time. ....6
J. Preparation for a juvenile's testimony. ....6
K. Employ child-sensitive questioning. ....6
L. Credibility and burden of proof assessments. ....7
M. Unaccompanied alien child (UAC). ....7

V. Conclusion ....8

## I. Introduction

Immigration cases involving children are complicated and implicate sensitive issues beyond those encountered in adult cases. For instance, an infant brought into the United States illegally by his family, an older child smuggled into the United States by relatives, an adolescent gang member, and a teenager convicted as an adult for serious criminal activity are all examples of immigration cases involving children, but they may not warrant identical treatment under the law.

This OPPM provides guidance for adjudicating cases involving any unmarried individual under the age of 18, including as both respondents and third-party witnesses. It is not intended to limit the discretion of an Immigration Judge, and nothing herein should be construed as mandating a particular outcome in any specific case.

## II. Definitions

Immigration law utilizes multiple terms in different legal contexts to refer to unmarried individuals who have not attained a certain age. The Immigration and Nationality Act (INA or Act) defines a "child" as an unmarried person under 21 years of age. INA §§ 101(b)(1) and (c)(1). The regulations define a "juvenile" as an alien under the age of 18, 8 C.F.R. § 1236.3, and refer to a "minor" when describing aliens under 14 years of age. 8 C.F.R. §§ 103.8(c)(2)(ii); 1236.2. The Homeland Security Act of 2002 introduced the concept of an "unaccompanied alien child (UAC)," which it defined as a child who has no lawful immigration status in the United States, has not attained 18 years of age, and who has no parent or legal guardian in the United States, or no parent

or legal guardian in the United States available to provide care and physical custody. 6 U.S.C. § 279(g)(2); 8 U.S.C. § 1232(g).

This OPPM applies to all immigration proceedings involving unmarried children under the age of 18. Therefore, to avoid confusion, any references in this OPPM to the terms "child," "unaccompanied alien child," "juvenile," or "minor" (or their plural forms) are meant to refer to an unmarried individual under the age of 18. Further, although this OPPM applies primarily to respondents, its principles may also be applicable to child witnesses in immigration proceedings, regardless of whether the witness is an alien, a U.S. citizen, or a U.S. national.

## III. Basic principles

Immigration Judges should be mindful of several overarching principles when presiding over cases involving juveniles:

A. Individual circumstances. Every Immigration Judge should employ age-appropriate procedures whenever a juvenile respondent or witness is present in the courtroom. However, not all cases involving juveniles are alike, and Immigration Judges should apply appropriate procedures in juvenile cases as the specific circumstances of the case warrant and always in accordance with applicable law.

B. Best interest of the child. Issues of law—*e.g.* determinations of removability and eligibility for relief or protection from removal—are governed by statutes, regulations, and case law. Although 8 U.S.C. § 1232(c)(2) contains provisions for the Department of Health and Human Services (HHS) to consider "the best interest of the child" in certain circumstances, no similar provision exists in the INA directing Immigration Judges to consider the concept of "the best interest of the child" as a legal standard for determining removability or eligibility for relief or protection from removal. Therefore, this concept alone cannot provide a legal basis for granting relief or protection not otherwise sanctioned by law.

C. Legal and personal representation. Neither the INA nor the regulations permit Immigration Judges to appoint a legal representative or a guardian ad litem. Nevertheless, all Immigration Judges are required to provide a list of *pro bono* legal service providers in accordance with 8 C.F.R. § 1240.10(a)(2) and should encourage the use of appropriate *pro bono* resources, consistent with applicable ethical principles.

D. Judicial impartiality. Although juvenile cases may present sympathetic allegations, Immigration Judges must be mindful that they are unbiased arbitrators of the law and not advocates for either party in the cases they hear. Accordingly, Immigration Judges must remain neutral and impartial when adjudicating juvenile cases and shall not display any appearance of impropriety when presiding over such cases. *Ethics*

*and Professionalism Guide for Immigration Judges*, §§ V, VI, and VIII; 5 C.F.R. §§ 2635.101(b)(8) and (14).

E. Applicability to all Immigration Judges. All Immigration Judges shall be prepared to adjudicate cases involving juveniles. Accordingly, all Immigration Judges have the responsibility to be familiar with the applicable law and guidance related to juveniles and to maintain professional competence in adjudicating such cases. *Ethics and Professionalism Guide for Immigration Judges*, § IV. In particular, Immigration Judges must not only be familiar with the different statutory and regulatory definitions of "child," "juvenile," "minor," and "unaccompanied alien child" but also must apply them correctly in the appropriate context.

F. Child Abuse and Human Trafficking Protocols. Issues regarding child abuse/neglect and human trafficking may arise when adjudicating cases involving juveniles. EOIR personnel, including Immigration Judges, are required to report instances of child abuse and/or neglect and suspected human trafficking in accordance with the guidance outlined in *Identification and Referral of Potential Trafficking Victims or Traffickers before the Executive Office for Immigration Review* (April 27, 2015) and *Identification and Referral of Potential Child Abuse and/or Neglect Victims before the Executive Office for Immigration Review* (May 23, 2017). Each protocol offers tools for identifying abuse/neglect and/or human trafficking and guidance for when and how to report it. For assistance with reporting a child abuse/neglect or human trafficking case, please contact the Office of the General Counsel.

IV. Courtroom setting and procedures

With these basic principles in mind, Immigration Judges should also be cognizant of special circumstances occasionally raised by juveniles participating in immigration proceedings. Although claims in immigration court are raised in an adversarial setting, cases involving juveniles may make special demands on all parties. Therefore, consideration should be given, in appropriate circumstances, to some modifications to the ordinary courtroom operations. Nevertheless, Immigration Judges should be mindful that an alien's status as a juvenile does not, by itself, excuse compliance with statutory and regulatory requirements. The following guidance is offered to balance appropriate consideration of a juvenile's circumstances with legal requirements applicable to all immigration proceedings:

A. Courtroom orientation. The courtroom is usually an unfamiliar place for children. To the extent that resources and time permit and under the supervision of court personnel, children may be permitted to explore the courtroom—other than the Immigration Judge's bench, records of proceedings, and courtroom technological equipment such as computers and video teleconferencing units—and to practice answering simple questions in preparation for testimony. Additionally, to the extent that resources permit, court administrators should be receptive to requests by legal representatives or custodians of children to visit

immigration courts prior to the initial hearing. Court administrators should also be open to other ways to familiarize children with court operations.

B. Scheduling juvenile cases. Wherever feasible, courts should conduct cases involving juvenile respondents, particularly unaccompanied alien children, on a separate docket or at a fixed time in the week or month. If the number of cases does not warrant a separate docket, courts should attempt to schedule children's cases at a specific time on the regular docket but separate and apart from adult cases. Courts should similarly keep detained dockets for adults and children completely separate and try to ensure that dockets do not have the effect of forcing unaccompanied alien children to be transported or held with detained adults. To help ensure that juvenile and adult dockets are kept separate, court personnel will ensure that the date of birth for all juvenile respondents in immigration proceedings is entered in CASE.

C. Courtrooms. Courtrooms are not equipped with special furniture designed for children. However, Immigration Judges can and should permit reasonable modifications to the courtroom to accommodate children, such as: permitting counsel to bring pillows or booster seats for young respondents; permitting young respondents to sit in one of the pews with an adult companion or permitting the companion to sit at counsel's table; allowing a young child to bring a quiet toy, book, or other personal item into the courtroom; permitting the child to testify while seated next to an adult or friend, rather than in the witness stand; etc. These simple and common sense adjustments would not alter the serious nature of the proceedings. They would, however, help foster an atmosphere in which a child is better able to participate more fully in the proceedings.

D. Waiver of a juvenile's appearance. Unless a juvenile's appearance has been waived by the Immigration Judge, he or she is obligated to attend his or her immigration proceeding. Immigration judges should adhere to the requirements of 8 C.F.R. § 1003.25 in determining whether to waive a juvenile's appearance at a hearing. In all cases where an Immigration Judge waives the presence of a juvenile at a hearing, the Immigration Judge must state on the record that the waiver has been granted or must issue a written order to that effect.

E. Removing the robe. Like the courtroom, the robe is a symbol of the Immigration Judge's independence and authority. While most children will be far more interested in the judge's behavior than the judge's attire, the robe may be disconcerting for younger respondents. If an Immigration Judge determines in a particular case that dispensing with the robe would add to the child's ability to participate, OPPM 94-10, *Wearing of the Robe During Immigration Judge Hearings*, is modified to permit the judge to remove the robe in that instance.

F. Control access to the courtroom. Young children may be reluctant to testify about painful or embarrassing incidents, and the reluctance may increase with

the number of spectators or other respondents present. Although hearings are generally open to the public, judges should be sensitive to the concerns of juveniles if there is a motion to close the hearing pursuant to 8 C.F.R. § 1003.27.

G. Explain the proceedings at the outset. In cases involving juveniles, Immigration Judges should consider making a brief opening statement at the beginning of each proceeding or at the commencement of a specialized docket for juvenile cases to explain the purpose and nature of the proceeding, to introduce the parties and discuss each person's role, and to explain operational matters such as recording, interpreting, and note taking.

H. Pay attention to the interpreter. Immigration Judges should permit time for the interpreter and a younger child to establish some rapport by talking about unrelated matters before testimony is taken. Immigration Judges should also watch for any indication that the child and the interpreter are having difficulty communicating. Any statement to be translated should be made at an age-appropriate level and translated at that level for the child respondent.

I. Be aware of time. As in any case, the Immigration Judge should give the parties a full opportunity to present or challenge evidence. However, stress and fatigue can adversely impact the ability of a younger child to participate in his or her removal proceedings. Therefore, where appropriate, Immigration Judges should seek not only to limit the number of times that children must be brought to court but also to resolve issues of removability and relief without undue delay. Additionally, if a child is called to testify, Immigration Judges should consider limiting the amount of time the child is on the stand without compromising due process for the opposing party. Similarly, Immigration Judges should recognize that, for emotional and physical reasons, children may require more frequent breaks than adults.

J. Preparation for a juvenile's testimony. As with any witness, an Immigration Judge should be confident that the child is competent to testify in the proceedings, including whether the child is of sufficient mental capacity to understand the oath and to give sworn testimony. The explanation of the oath should vary with the age of the witness: promise "to tell the truth" or promise "to tell what really happened," etc. Children should be told that it is all right for them to say, "I don't know" if that is the correct answer and to request that a question be asked another way if the child does not understand it. Immigration Judges should also explain to the child witness that he or she should not feel at fault if an objection is raised to a question.

K. Employ child-sensitive questioning. Language and tone are especially important when juveniles are witnesses. Proper questioning and listening techniques will produce a more complete and accurate record. The immigration court process is

adversarial. Due process and fundamental fairness require that testimony by a juvenile witness, like that of any other witness, be subject to cross-examination, particularly if the testimony is speculative, vague, or contains indicia of inappropriate coaching. Nevertheless, Immigration Judges should ask and encourage the parties to phrase questions to a juvenile witness in age-appropriate language and tone. Abusive questioning should not be tolerated under any circumstances.

L. Credibility and burden of proof assessments. Testimony from a child, as with testimony from any witness, is neither inherently reliable nor inherently unreliable. As noted above, an Immigration Judge must always first ensure that a child is competent to testify before considering what weight, if any, to afford that testimony. Immigration Judges should also recognize that children, especially young children, will usually not be able to present testimony with the same degree of precision as adults. Vague, speculative, or generalized answers by a child, especially a particularly young child, are not necessarily indicators of dishonesty. Immigration Judges should recognize that a child's testimony may be limited not only by his or her ability to understand what happened, but also by his or her skill in describing the event in a way that is intelligible to adults. Immigration Judges should be mindful that children are highly suggestible and their testimony could be influenced by their desire to please judges or other adults. Immigration Judges should bear in mind, however, that legal requirements, including credibility standards and burdens of proof, are not relaxed or obviated for juvenile respondents. Thus, although vague, speculative, or generalized testimony by a child witness is not necessarily an indicator of dishonesty, it may nevertheless also be insufficient by itself to be found credible or to meet an applicable burden of proof. *See Matter of Y-B-*, 21 I&N Dec. 1136 (BIA 1998) (finding that general testimony may be insufficient to meet the burden of proof); *Matter of E-P-*, 21 I&N Dec. 860, 862 (BIA 1997) (finding that credible testimony alone is not necessarily dispositive to meet the burden of proof).

M. Unaccompanied Alien Child (UAC). Immigration Judges should exercise special care in cases where the respondent is alleged to be a UAC. First, a UAC is eligible for voluntary departure at no cost to the child. 8 U.S.C. § 1232(a)(5)(D)(ii). To the extent practicable, an Immigration Judge should expedite consideration of a request for voluntary departure by a UAC, especially one that is in the custody of HHS.

Second, UAC status is not static, as both a UAC's age and his or her accompaniment status may change. Thus, judges should ensure that an alien claiming to be a UAC is, in fact, a UAC at the time his or her case is adjudicated. Moreover, because a UAC generally receives more favorable treatment under the law than other categories of illegal aliens, there is an incentive to misrepresent

accompaniment status or age in order to attempt to qualify for the benefits associated with UAC status.

Consequently, Immigration Judges, while remaining sensitive to the concerns of juveniles, should be vigilant in adjudicating cases of a purported UAC. In June 2017, all Immigration Court employees were reminded of their responsibilities regarding suspected fraud and abuse, particularly regarding applications for benefits, relief, or protection in removal proceedings, and were directed to take action where warranted. All EOIR employees have an ethical duty to the United States government and its citizens to disclose "waste, fraud, abuse, and corruption to appropriate authorities." 5 C.F.R. § 2635.101(b)(11). This duty applies to immigration judges and is further codified in Section VII of the *Ethics and Professionalism Guide for Immigration Judges*. Because reporting fraud and abuse in the immigration system is an ethical duty of all EOIR employees, including Immigration Judges, any suspicion of fraud or misrepresentation by someone in a UAC case should be reported to the EOIR Office of the General Counsel Fraud and Abuse Prevention Program.

## V. Conclusion

Immigration cases involving juveniles are challenging; there is no blanket approach applicable to all such cases. Although juvenile cases warrant special consideration in appropriate circumstances, Immigration Judges should also be mindful that legal requirements applicable to all immigration cases are not necessarily diminished solely because the respondent is a juvenile.

If you have any questions regarding this OPPM, please contact your Assistant Chief Immigration Judge.